JONES AND WHITE
vs. } DECEMBER TERM, 1847.
LLOYD BROWN ET AL.

[HUSBAND AND WIFE—MARRIAGE SETTLEMENT.]

By a marriage settlement the property of the wife was conveyed to trustees, for the benefit of the wife, *during coverture*, free from the control, and not liable to the debts of her husband, with power to the wife to dispose of the same, either by last will and testament, in writing, or by any other writing signed by her hand in presence of two witnesses. The wife died without making any disposition whatever of the property. It was HELD—

That the contract did nothing more than suspend the marital rights of the husband during the life of the wife; and, upon her death, the property remained precisely in the same condition it would have been in if no such power of appointment had been created; and, consequently, the rights of the husband revived upon her death.

When it is intended in a marriage settlement to exclude the rights of the husband to the personal property of the wife, in the event of his surviving her, and in default of her appointment, an *express provision* to that effect should be inserted in the deed.

When the settlement makes no disposition of the property in the event of the wife's death, and provides only for her dominion over it during coverture, the right of the husband, as survivor, is a fixed and stable right, over which the court has no control, and of which he cannot be divested.

[In the month of November, 1841, a marriage being at that time in contemplation, between Drusilla Elliott and Lloyd Brown, the latter, for the purpose of securing to the former the

undisturbed enjoyment of the property, of which she was then seized and possessed, or to which she might be entitled in expectancy, entered into a contract with her, and the complainants as trustees, not to intermeddle with her property in any manner, but to permit her to appropriate it to her own use, or to such other use or uses, as she, in the manner specified in the contract, might appoint. The marriage was consummated between the said Brown and Elliott, shortly after the execution of this contract, and the latter having subsequently become entitled, under the will of her uncle, to certain real and personal property, the greater portion thereof came into the hands of trustees, who permitted the said Brown and wife, to hold the same for several years ; at the expiration of which time, the wife died, leaving two children, the issue of said marriage ; without having made any disposition of the trust property ; and leaving unpaid, several debts contracted by her, and for which her creditors contended, that her separate estate was responsible. After her death, her husband continued to retain possession of the property, contending that, as no appointment in pursuance of the power furnished by the contract, had been made by his wife, the contract could no longer operate to debar him of his marital rights. The bill was filed by the trustees, to obtain the direction of the court, as to their proper course in regard to the husband's claim, and to ascertain, whether the trust had expired, and if the creditors of the deceased could consequently proceed at law to recover the said debts.]

The Chancellor :

It appears to me, that the antenuptial contract in this case, does nothing more, than suspend the marital rights of the husband, during the life of the wife, with power reserved to her, to dispose of the property by will, in writing, or by any other writing whatever, executed in the mode prescribed by the instrument, and the wife having failed to make such testamentary, or other disposition, the rights of the husband are revived by her death.

There is nothing in this contract, which in terms, or by ne-

cessary implication, excludes the right of the husband, in the event of his surviving the wife, and in default of her exerting the power which was reserved to her, to dispose of the property by will, or by a writing in her lifetime, executed in the mode pointed out.

The language of the settlement is, that "notwithstanding the marriage shall take effect, all the rents and profits of the. real and personal estate, of which Drusilla Elliott, is now seized, and possessed, or entitled to in expectancy, which shall become due, and payable to her the said Drusilla Elliott, and, also, the interest thereon due or to become due, also the reversion and reversions of the said real and personal estate, shall be accounted, reckoned and taken, as the separate and distinct, real and personal estate of, and from the estate of him, the said Lloyd Brown, and be in nowise liable or subject to him, or to the payment of any of his debts, but with the profits or increase, that shall thereafter be gotten, gained, or made, of the same, be ordered, disposed, and employed, to such person, or persons, to, and for such use, and uses, intents and purposes, and in such manner, and form, as is hereinafter mentioned and declared; that is to say, that the ready money arising or accruing out of the said separate and distinct, real and personal estate, of which the said Drusilla Elliott, is now seized and possessed, or which she may be entitled to, in expectancy, shall from time to time be placed out at interest, on such securities, as the said Drusilla shall think fit; which securities, *during the coverture*, shall be taken and made, in the names of the said Henry Jones, Jr., and William Q. White, or the survivor of them, or in the name or names of such other person, or persons, as the said Drusilla, shall order and appoint, in trust for her, said Drusilla Elliott"— "and that, all the separate and distinct estate, as before described, declared and allotted, for the said Drusilla Elliott, as aforesaid, and the produce, and increase thereof shall be had, taken, held, possessed, and enjoyed, by such person, or persons, and for such use and uses, as the said Drusilla Elliott, shall, at any time or times, hereafter, during her life, limit, devise, order or dispose of the same, or any part thereof, either by her last

will and testament, in writing, or by any other writing whatsoever, signed with her hand, in the presence of two or more creditable witnesses."

There can be no doubt, that these provisions in the deed, freed the property and its proceeds, from the control of the husband, and from responsibility for his debts, *during the coverture,* and that the wife might at any time, during her life, in the way designated, have appointed the uses to which it should be applied after her death. She did not, however, exercise this power, and it follows, therefore, as I think, that upon her death the property remained precisely in the condition it would have been in, if no such power of appointment had been created; and the marital rights of the husband, being only suspended during the coverture, at once attach upon it.

In the case of *Steward* vs. *Steward,* 7 *Johns. Ch. Rep.,* 245-6, the Chancellor says, "I believe it has been the invariable practice, and that the uniform course of the precedents will show it, that when it is intended in a marriage settlement, to exclude the rights of the husband to the personal property of the wife, in the event of his surviving her, and in default of her appointment, an *express provision to that effect is inserted in the deed*"—and in the same case, the Chancellor also observed, "when the settlement makes no disposition of the property in the event of the wife's death, and provides only for her dominion over it during coverture, the right of the husband, as survivor is a fixed and stable right, over which the court has no control, and of which he cannot be divested.

The deed of settlement which was under examination in that case, was substantially, in many of its provisions, like the present, and the decree was in favor of the right of the husband; the wife having died without exercising the power of appointment.

In the case of *Ward et ux.* vs. *Thompson,* 6 *Gill & Johns.,* 349, the doctrine of the case of Stewart vs. Stewart, was fully confirmed, though the court made a decision adverse to the right of the husband, because by the deed he did not make a mere temporary surrender of his marital rights, but in the lan-

guage of the Court of Appeals, "abandoned them forever." Upon examining the settlement in Ward and Thompson, it will be found, that the husband agreed that, all the property mentioned in it should "be under and subject to the exclusive, and entire management and control of the said Ann W. Menger, (the intended wife,) her *heirs, executors, administrators* or *assigns,*" "and the said Ann W. Mengers her *heirs, executors, administrators* or *assigns,* to receive and enjoy the rents, issues and profits thereof," without the interference in any manner of the said Robert Thompson" (the intended husband.) By the express terms, therefore, of that deed, there could be no doubt, that the husband not only meant to surrender his marital rights during the coverture, but that he intended to surrender them to the *heirs* and *representatives* of the wife, as well as to the wife herself. And it was upon this express ground, that the Court of Appeals based their decision against him, and in favor of her representatives.

It is true, there are in the deed now under consideration, some provisions, which do look to a continuance of the trust beyond the life of the wife; but these provisions have regard merely to the change of investments, and do not in any way alter the uses to which the investments shall be held. The words being, "that the new securities, &c. ; shall go and remain upon the same trusts and for the same intents and purposes, as the original stocks," &c. ;—and these original stocks, as we have seen, were, *during the coverture,* to be taken and made in the names of the trustees, or the survivor of them, and with all the estate of the wife, to be subject to her appointment by will, or deed, executed in the presence of two witnesses.

This provision in the deed is certainly not very intelligible, and not easily reconcilable with other portions of the instrument, and cannot, therefore, have the effect, of destroying that fixed and stable right of the husband, which Chancellor Kent says, can only be divested by an *express provision.*

[No appeal was taken from this decision.]