JOSHUA J. ATKINSON,
PERMANENT TRUSTEE OF
WILLIAM C. SPINDLER
vs.
JAMES PHILLIPS, SEN'R. ET AL.

December Term, 1849.

[CONVEYANCE VOID AS TO CREDITORS—RIGHT OF PERMANENT TRUSTEE TO FILE A BILL TO VACATE SUCH.]

A VOLUNTARY conveyance made by a person not indebted at the time, in favor of his wife and children, cannot be impeached by subsequent creditors, upon the mere ground of its being voluntary.

The mere fact, that the grantor was indebted at the time, does not, *per se*, constitute a substantive ground to avoid a voluntary conveyance for fraud, even in regard to prior creditors. The question of fraud is to be ascertained from all the circumstances of the case, and not alone from the mere fact of indebtment at the time.

If the grantor be not indebted to such a degree, as that the settlement will deprive the creditors of an ample fund for the payment of their debts, the consideration of natural love and affection will support the deed, although a voluntary one, against creditors, because it is free from the imputation of fraud.

But the existence of such means to pay creditors, must be shown by the parties claiming under the deed, and the burden of proof is clearly upon them, to repel the fraud, presumable from the condition of the grantor, at the time the conveyance was made.

A voluntary conveyance in favor of the wife of the grantor, was set aside in this case in favor of creditors, upon proof that he was largely indebted at the period of its execution, and no attempt being made to prove that he had means for the payment of his debts.

A conveyance, purporting to be made for a monied consideration of $3500, was also set aside, upon clear proof, that the grantor at the time, was irretrievably insolvent, and knew himself to be so, and that it was made with the meditated design to injure and defraud his creditors.

A deed, fraudulent and void as to creditors, is, nevertheless, good *inter partes*.

The permanent trustee of an insolvent debtor, has the right to file a bill to set aside conveyances made by his insolvent, as fraudulent at common law, or under the statute of Elizabeth, against creditors. Unless the trustee had this power, the creditors prejudiced by the conveyance, might be without remedy.

[The object of the bill in this case, which was filed on the 5th of March, 1846, was to vacate two conveyances made by William C. Spindler to James Phillips, senr., upon the ground that they were executed to delay, hinder and defraud the credi-

tors of the said Spindler. The first of these deeds is dated on the 27th of March, 1834, by which, for the nominal consideration of ten dollars, Spindler conveyed to Phillips, his father-in-law, a large and valuable real estate, situate in the city and county of Baltimore, to be held in trust for the separate use of the wife of said Spindler, (the daughter of Phillips,) during her life, and upon certain other trusts expressed in said deed.

The other conveyance bears date on the 18th of April of the same year; whereby, as alleged by the bill, for the pretended consideration of thirty-five hundred dollars, Spindler absolutely and unconditionally conveyed to the aforesaid Phillips all his household and kitchen furniture. It is alleged by the bill, that the consideration expressed in this instrument was not in fact paid, and that both conveyances were executed for the purpose of defrauding the creditors of the grantor, who was at the time largely indebted to various individuals and corporations.

The bill further alleges, that on the 13th of January, 1835, Spindler, being indebted as aforesaid, and being the owner by assignment of a judgment recovered in Baltimore County Court against Jonathan Manro, with a like fraudulent intent, assigned such judgment to the use of Hugh Birckhead, who had large dealings with Phillips, and that the money, when received on said judgment by Birckhead, was by him passed to the credit of said Phillips; and then prays that this money also may be accounted for by Phillips.

The answer of Spindler and wife to this bill, denies the fraud charged, and insists upon the fair intent and purpose of this deed, and that the consideration expressed in each of them was true and bona fide. It does not deny the fact of Spindler's large indebtedness at the time the conveyances were executed, but avers that he was then engaged in a large and prosperous business, was possessed of property of more than four times the amount of his debts, and that the deed was executed with the view of securing a provision for his family, in the event of adversity in business, and at a time when such a provision was not only justifiable, but laudable and prudent. This answer also denies, altogether, the assignment of the judgment to Birck-

head, as charged in the bill. The answer of Phillips very near-
ly corresponds with this, and need not be more particularly ad-
verted to.

On the 17th of December, 1834, Phillips, through his agent,
he being absent, purchased the county property of said Spind-
ler, sold by the sheriff under executions upon judgments recov-
ered against Spindler, in the year 1834, by the General Insur-
ance Company, for the sum of two hundred and fifty dollars,
although the same was appraised at nine thousand two hundred
dollars ; and he, also, under the same circumstances, on the
22d of January, 1835, purchased the town property aforesaid,
appraised at four thousand dollars, for the sum of three thousand
eight hundred dollars, and obtained deeds therefor from the
sheriff.

[The Chancellor, after stating the case, says :]

THE CHANCELLOR :

These deeds, it will be observed, are not impeached upon
the ground of their being fraudulent under the provisions of the
insolvent system, as having been executed by Spindler with a
view of being and becoming an insolvent debtor. They are
charged as having been made to delay, hinder and defraud cred-
itors, and as, therefore, being fraudulent and void, both at com-
mon law and under the provisions of the statute of 13th Eliza-
beth, chap. 5; and, whether they are so or not, is the only
question that has been discussed by the counsel in their oral
and written arguments.

The principle extracted by Mr. Chancellor Kent from a re-
view of the cases is, "that if the party is indebted at the time
of the voluntary settlement, it is presumed to be fraudulent in
respect to such debts ; and no circumstance will permit those
debts to be affected by the settlement, or repel the legal pre-
sumption of fraud"—that "the presumption of law in this case
does not depend upon the amount of the debts, or the extent
of the property in settlement, or the circumstances of the par-
ty"—"that there is no such line of distinction set up or traced
in any of the cases ; and that, therefore, the law has wisely dis-

43*

abled the debtor from making any voluntary settlement of his estate to stand in the way of his existing debts."

This principle so affirmed by Chancellor Kent in *Reade* vs. *Livingston*, 3 *Johns. Ch. Rep.*, 500, 501, as the clear and uniform doctrine taught by the cases, is considered by Mr. Justice Story as *strictissimi juris*, and pushing the rule to an unreasonable extent, unless indeed the conveyance is intentionally made to defraud creditors, when it would be void on account of ill faith. But if the conveyance is founded upon a good consideration, and is, moreover, *bona fide*; then, though the grantor may be indebted at the time, yet if the circumstances attending the transaction are such as to repel the presumption of fraud, it seems, from the reasoning and cases cited by the writer, that the mere circumstance of the party not being entirely exempt from debt at the time would not be sufficient to overthrow the conveyance.

The doctrine established by the Supreme Court of the United States, is, that a voluntary conveyance made by a person not indebted at the time, in favor of his wife and children, cannot be impeached by subsequent creditors upon the mere ground of its being voluntary. It must be shown to have been fraudulent, or made with a view to future debts; and the mere fact of being indebted at the time does not, *per se*, constitute a substantive ground to avoid a voluntary conveyance for fraud, even in regard to prior creditors. The question whether fraudulent or not, is to be ascertained from all the circumstances of the case, and not alone from the mere fact of indebtment at the time. "If," say the Supreme Court in *Hinde's Lessee* vs. *Longworth*, 11 *Wheat.*, 1991, "it could be shown that the grantor was in prosperous circumstances, and unembarrassed, and that the gift to the child was a reasonable provision, according to his state and condition in life, and leaving enough for the payment of the debts of the grantor, the mere fact of his being indebted would not make the deed fraudulent." The want of a valuable consideration may be a badge of fraud, but it is only presumptive, and not conclusive, evidence of it, and may be rebutted by evidence on the other side." And this

doctrine, as Mr. Justice Story says, was asserted in a case where the conveyance was sought to be set aside by persons claiming under judgment creditors upon antecedent debts. 1 *Story's Eq.*, sec. 362.

If the high authority of the Supreme Court required any support, it would be found in the cases cited by the writer, (in note 21 to this section,) and particularly in the case of *Verplanck* vs. *Story*, 12 *Johns. Rep.*, 536, in which Mr. Justice Spencer, in delivering the opinion of the court, said, "if the person making a settlement is insolvent or in doubtful circumstances, the settlement comes within the statute of 13th Elizabeth, ch. 5. But if the grantor be not indebted to such a degree as that the settlement will deprive the creditors of an ample fund for the payment of their debts, the consideration of natural love and affection will support the deed, although a voluntary one, against creditors, for, in the language of the decisions, 'it is free from the imputation of fraud.' "

These decisions, thus modifying and mitigating the rule upon this subject, as laid down by Chancellor Kent, in the case referred to, are quite in accordance with the doctrine held by the Court of Appeals of this state, in *Jones* vs. *Sluby*, 5 *H. & J.*, 372, and appear to me to be so perfectly reasonable and judicious, that I should be disposed to adopt and follow them, even if opposed by authorities equally imposing.

That the grantor, Spindler, was largely indebted at the period of the execution of the deed of the 27th March, 1834, is not denied by his answer, and is, moreover, abundantly established by the evidence. If not actually, at that time, insolvent, he was unquestionably in precarious circumstances, and although he alleges that he retained ample means to pay his debts, no attempt has been made to prove the existence of such means, and the burden of proof to repel the fraud presumable from the condition of the grantor at the time, is clearly upon the parties claiming under the deed. *Birely* vs. *Staley*, 5 *G. & J.*, 432.

My opinion, therefore, is, that this deed of the 27th of March, 1834, is void as to creditors under the statute of Elizabeth, being purely voluntary, having been made by a party shown to have

been largely indebted at the time, and the parties claiming under it having failed to show other property owned by the grantor, sufficient to pay his debts; and, being moreover convinced, from the evidence and circumstances of the case, that the grantor had not, independent of the property so conveyed, sufficient to pay the demands of his creditors. I do not, however, mean to be understood as deciding, that creditors, impeaching a voluntary conveyance made by their debtor, are bound to show, affirmatively, that the debtor has by the conveyance stripped himself of the means of paying his debts; because, I think, the parties claiming under the deed, are required to show that the grantor did not so disable himself, and that a sufficient fund remained to satisfy the claims of his creditors; and that, therefore, the facts of this case are even stronger than would be required to bring it within the less stringent principle laid down by the Supreme Court, and established by the other cases referred to.

The next inquiry has reference to the bill of sale of the 18th of April, 1834, and which purports to be made for a monied consideration of $3500.

The original answer of the grantee, Phillips, to the averments and interrogatories of the bill in reference to the execution of this bill of sale, and the time and manner of paying the consideration expressed in it, and also in other respects, being evasive and unsatisfactory, the complainant excepted thereto, and after argument, the exceptions were sustained, and the defendant, by an order passed on the 29th of October, 1846, was required to put in a full and sufficient answer, by a day limited for that purpose.

And it appears by the answer filed in obedience to this order, that he was absent from the United States, on a voyage to Brazil and Buenos Ayres, from a day prior to the 27th of March, 1834, to the 15th of January, 1835, so that he was not and could not have been present, when either the deed of trust or bill of sale was executed. The answer, in responding to the inquiry respecting the time and manner of paying the consideration expressed in the bill of sale, says, "it was duly

and fully paid by the respondent to said Spindler, by advances from time to time made, and by a claim for board from said Spindler and his family, furnished by this respondent"—"that said advances and board were supplied to said Spindler by this respondent, personally, prior to the execution of said bill of sale," &c.

This bill of sale, then, which conveyed to the grantee all the household and kitchen furniture of Spindler of every kind and description, without reservation or exception, was executed in the absence of Phillips, the grantee, without the slightest solicitation on his part, and, as confessed in the answer of Phillips, to secure in part a claim due him, from Spindler, for the board of himself and family. It professes upon its face to have been executed for a monied consideration of three thousand five hundred dollars; and there is, moreover, a receipt at the foot of the instrument for that sum. That the sum of $3500 was not paid in cash, stands confessed by the answer, and we have no means of knowing what proportion was so paid; the answer being silent upon the subject. Now, it is certainly worthy of remark, and calculated to arouse suspicion, that a man who swears that he was at that very time engaged in a large and prosperous business, and worth, and possessed of property, independent of that contained in these instruments, exceeding in value more than four times the amount of his debts, should, without solicitation, and in payment of a claim against him, partly for the board of himself and family, convey away, absolutely and unconditionally, all his household and kitchen furniture; and this ground of suspicion is certainly not weakened by the fact that the grantee in this conveyance is his father-in-law, who, so far from insisting upon such conveyance for his security, was absent from the country at the time.

That Spindler was hopelessly insolvent at the date of this conveyance, and when the deed of the preceding month of March was executed, I am thoroughly convinced from the evidence. It would be a consumption of time to go into a minute analysis of the proof upon this point, and I deem it sufficient to say, that upon a very careful examination of it, I do not see

any grounds upon which a reasonable doubt can be entertained. I am not only entirely satisfied that he was irretrievably insolvent, but that he knew himself to be so, and that these conveyances were made for the purpose of placing his property beyond the reach of his creditors ; and that it is the duty of this court to frustrate the design, unless there stands in the way some insuperable principle of law.

The property contained in the deed of trust of the 27th of March, 1834, and the bill of sale of the 18th of April, of the same year, seems to have been every thing of a visible and tangible nature which Spindler possessed, and when, in addition to these transfers, he, in January, 1835, assigned, for Phillips' benefit, the judgment against Manro, he stripped himself of almost every thing he possessed in the world which could be made available to his creditors.    And what makes the assignment of the judgment still more reprehensible, it appears not only to have been made without consideration, but the fact that any such assignment was made, is denied by the answer of Spindler. The record, however, and the proof of Mr. Birckhead fully disprove the answer in this respect, and establishes not only the fact of the assignment, but that the money received upon the judgment inured for the benefit of Phillips.

And taking all these transactions and grouping them together—the proximity of the conveyances to each other in point of time—the total absence, or even pretence, of any valuable consideration for the deed of March, 1834, by which a large amount of property was settled upon the wife and child of Spindler, the suspicious circumstances which surround the bill of sale of April, 1834, and the denied but proved transfer of the judgment of 1835, and I think I may say, in the language of Judge Story, in *Bean* vs. *Smith et al.*, 2 *Mason's Reports*, 294, that "the badges of fraud cluster about them in every direction," and that these conveyances and transfers were made with the meditated design to injure and defraud creditors.

It appears to me impossible to read this record, and not come to the conclusion that Spindler saw and was fully sensible of the desperate condition of his affairs, and that it was his

purpose to benefit his family at the expense of his creditors. The deeds, then, in my judgment, were made to delay, hinder and defraud them, and must be vacated and the property sold for their benefit, unless the remaining ground of defence is a good one, and that rests upon the effect of the sale by the sheriff to Phillips, under executions upon judgments against Spindler ,recovered by the General Insurance Company, in the year 1834.

It is supposed, by the counsel for the defendants, that this purchase by Phillips, at the sale made by the sheriff, gives him every thing necessary to perfect his title, whatever may have been the infirmities of the original deed, unless it can be shown that the sale was collusive and fraudulent, which is denied in the answer, and contested in the argument.

I do not deem it necessary to investigate the question of fraud, as charged on the one side, and disputed on the other, because I think it very clear, that even assuming the fairness of this part of the transaction on the part of Phillips and Spindler, the fate of the case must depend upon the original integrity of the deed of March, 1834, and that the title of Phillips to hold the property conveyed thereby, against the creditors of Spindler, can draw to it no aid from the sheriff's sale.

The deed of March, 1834, though in my opinion, fraudulent and void as to creditors, was clearly good *inter partes*, and of course, Spindler was thereby divested of any interest in the property conveyed, other than the merely contingent life estate reserved to him by the instrument itself, and when Phillips purchased at the sale made by the sheriff, upon an execution issued upon a judgment against Spindler, he acquired and could acquire nothing more than that contingent right, and the contingeney not having happened, upon which the title of Spindler to the beneficial interest in the property for life, was to arise, it would seem to follow necessarily, that this purchase is wholly ineffectual to clothe the purchaser with any rights which can be asserted against the creditors.

These views dispose of the grounds of defence taken in the answers, and urged in the argument, and, in my judgment show them to be untenable.

A difficulty, however, occurred to me at one time, respecting the right of the complainant, who is the permanent trustee in insolvency of Spindler, the grantor, to file a bill to vacate conveyances made by him as fraudulent, under the provisions of the statue of Elizabeth—I thought it might perhaps be doubted, whether, as the conveyances were good against the grantor himself, his insolvent trustee could be permitted to impeach them. Subsequent reflection, however, and an examination of one or two of the cases, has satisfied me that the doubt is not well founded ; and that unless the trustee may maintain such a suit, the creditors of the insolvent, who are prejudiced by the conveyance, might be without remedy altogether.    According to the principles settled by the Court of Appeals in *Alexander* vs. *Ghiselin et al.*, 5 *Gill*, 138, the whole estate of the insolvent, whatever may be its condition, passes into the hands of the trustee, to be by him managed for the benefit of his creditors, who are deprived by operation of the insolvent system, of the right to pursue in their own names, any remedy against the property of the debtor, however it may be situated at the time of his application for relief.

It is true, that if there be a surplus after the payment of the claims of creditors, it will be enjoyed by the insolvent, and so far, and to that extent, the annulling the conveyances operates to his benefit, but still as the property or its proceeds must be in the first place applied to the payment of the creditors, the power of the court must be regarded as exerted chiefly for them ; and if the conveyance is void as against creditors, under the statute of Elizabeth, it would seem proper to permit the trustee to institute proceedings for the purpose of vacating it, as otherwise the creditors, though wronged, would be without remedy.

In Virginia, the sheriff, when a debtor takes the insolvent oath, and delivers in a schedule, is vested by the act of assembly with all the insolvent's estate, rights and interests ; and as the Court of Appeals of that state said, in the case of *Shirley* vs. *Long*, 6 *Randolph*, 748, "he represents both the insolvent and the creditors," "and it would be strange, that if the insolvent were to convey away half his property, and this most

manifestly fraudulent, this curator and trustee could do nothing, bring no suits, take no steps to recover this, and bring it into a division among the creditors.

The right of the trustee to file such a bill as the present, is maintained by the case of *Riggs* vs. *Murray*, 2 *Johns. Ch. Rep.*, 565, and is believed to have been decided by the Court of Appeals of this State, in the case of *Gatchell, permanent trustee* vs. *Uhler and Bruner*, not reported, and in *Winn and Ross* vs. *Albert and Wife.*

I am of opinion, therefore, that the present bill may be maintained ; and considering, for the reasons which have been stated, that the deed and bill of sale are void, as against creditors, a decree will be passed to that effect, when the property will be vested in the complainant as permanent trustee of Spindler, to be by him administered in insolvency.

The complainant having waived the residue of his prayer for relief, no opinion is expressed in relation thereto.

[An appeal was taken from this decree, which is still depending.]