CLARENCE L. CRISE *v.* SAMUEL K. SMITH ET AL.,
TRUSTEES, ET AL.

ELSIE R. CRISE *v.* SAMUEL K. SMITH ET AL.,
TRUSTEES, ET AL.

*Marriage Settlement—Effect of Divorce—Trust For Support—
Distribution of Income.*

While, as a general rule, and independently of statute, a divorce *a vinculo* ends all rights of either spouse dependent on marriage, and not actually vested, such as curtesy, dower, and property rights under statutes of distribution, as a rule transfers of property and contracts executed before divorce are not affected by the dissolution of the marital tie. p. 326

A marriage settlement, which was valid in its inception, and which was not fraudulently induced in contemplation of subsequent marital misconduct, is not abrogated by the divorce of the parties for such misconduct, unless the language of the instrument or contract contains an express provision against the conduct in question. p. 327

The rights of the *cestuis que trust* under a deed of marriage settlement must be ascertained from the true intent and meaning of the language used, which is to be liberally construed within the bounds of the natural and unconstrained import of the provisions of the entire instrument when considered in connection with its general scope and purpose. p. 328

In a marriage settlement in terms creating a trust to endure for the lives of both spouses, and upon the natural death of one then to continue until the natural death of the other, the fact that, where the names of the husband and wife appeared together, the name of the wife was ordinarily followed by the words "his wife," did not show an intention that the provision for the wife should cease upon a divorce *a vinculo* for the wife's fault. p. 329

A wife who united with her husband in a deed to another, that such other might make a deed of settlement in favor of

trustees for the benefit of the husband and wife, and thereby released her potential right of dower, became a purchaser for value, and is entitled to have the deed of settlement enforced against the husband according to its terms.                   p. 330

In the case of a deed of trust under which a husband and wife, subsequently divorced, and their infant daughter, were entitled to support out of the net income, it appearing that the trustees had been paying an unnamed portion of the income to the mother, with whom the daughter lived, *held* that it would be assumed, in the absence of facts to the contrary, that the income was being fairly divided, with due regard for the settlor's intention, the nature of the trust, and the relative obligations and rights of the three *cestuis que trust*.          p. 332

In the case of a trust under which three persons are entitled to support from the net income, in case any question arises as to the distribution of the income, the trustees may obtain the advice and direction of the equity tribunal which is supervising the administration of the trust.                   p. 333

*Decided April 7th, 1926.*

Appeals from the Circuit Court No. 2 of Baltimore City (STANTON, J.).

Separate petitions by Clarence L. Crise and Elsie R. Crise against Samuel K. Smith and John Watson, Jr., trustees, and May F. King, formerly May F. Crise. From a decree sustaining the demurrers of said May F. King to said petitions and dismissing both petitions, the petitioners separately appeal. Affirmed.

The causes were argued before URNER, ADKINS, OFFUTT, DIGGES, and PARKE, JJ.

*Charles Jackson,* with whom was *Arthur R. Padgett* on the brief, for the appellants.

*William L. Henderson,* with whom were *Stewart & Pearre* on the brief, for May F. King, appellee.

PARKE, J., delivered the opinion of the Court.

This appeal brings before us for construction a post-nuptial deed of settlement made by a third party to trustees under circumstances which are not fully disclosed by the record, but which are sufficient, with the concessions of fact made in the argument, to justify the inference that the unmarried nominal settlor, Elsie R. Crise, was selected for the purpose of having the real and personal property of Clarence L. Crise, together with the interest therein of his then wife, May F. Crise, conveyed to Elsie R. Crise, in order that this grantee might forthwith grant and convey the real and personal property so acquired to trustees as previously agreed. Accordingly, on the same day that she so acquired her title, Elsie R. Crise granted and conveyed it to Samuel K. Smith and John Watson, Jr., as trustees for the purposes of the settlement. The deed of trust was dated February 11th, 1916, and the trustees united with Elsie R. Crise in its execution for the purpose of signifying their acceptance of the trust. The deed of trust was recorded and jurisdiction of the trust was assumed in equity on May 31st, 1916, upon the petition of the conventional trustees.

After a conveyance of the real and personal property to the trustees, who were given ample and complete power with respect to sale, lease, conveyance, assignment, investment, re-investment and change of investments of the trust estate, and who were required to pay a list of creditors, aggregating $2,302.31, as soon as convenient after October 11th, 1917, the deed of trust directed the trustees to apply the income collected from the estate, first, to the payment of all taxes, fixed charges, including the mortgage obligation, and a commission to the trustees, and,

"Second: Beginning with the date hereof and continuing as hereinafter recited, to pay for the support of Clarence L. Crise and May F. Crise, his wife, and their children, so long as said Clarence L. Crise and May F. Crise, and the survivor of them, shall live, the net balance of said income, or so much thereof as said trustees shall deem right

and proper; provided, however (and not otherwise), that said sums of money payable for the support of said Clarence L. Crise and his wife and his children, may be paid into the hands of said Clarence L. Crise or May F. Crise, his wife, in proper person, and not into the hands of any other person or corporation whatsoever, whether claiming by, through or under said Clarence L. Crise or May F. Crise, his wife; and provided further (and this deed is made conditioned precedent upon this proviso), that no part of either principal or income of the property hereby intended to be conveyed, or the reinvestment of such principal and income, is or may be made liable for the debts, contracts or obligations of said Clarence L. Crise and May F. Crise, or either of them, or in any way subject to the control or disposition of them or either of them; * * *

"And for the purposes aforesaid or whenever to said trustees or their successors it may appear advantageous, said Elsie R. Crise doth hereby empower said trustees and their successors to bargain, sell, convey, lease, transfer, grant, assign and deliver and in any and every other manner, conditionally and absolutely, to dispose of, all and any of the property and estate then held by said trustees or their successors in the trust, and upon the death of both said Clarence L. Crise and May F. Crise, his wife, and upon the payment to the persons hereinabove recited of the amounts payable to them each as aforesaid, the trust hereby created shall cease, and the title to the property affected by this deed shall vest, free of the trusts hereby created, in those persons who, at that time, under the present laws of Maryland relating to inheritance, would be the heirs at law of said Clarence L. Crise; and for selling or otherwise disposing of any or all of said property, and for distributing it to those entitled to receive it at the expiration of the trust hereby created, the trustees hereunder, or their successors, shall receive a sum of money equal to the commissions allowable by the Circuit Court of Baltimore City to trustees doing similar services under its jurisdiction."

A construction of these provisions of the deed, which include the provisions of a spendthrift trust, was sought as a result of the termination of the marital status of the life tenants by their subsequent full divorce. On March 10th, 1921, Clarence L. Crise instituted proceedings in the Circuit Court of Baltimore City to obtain a divorce *a vinculo matrimonii* from his wife, May F. Crise; and on May 23rd, 1921, he obtained a decree for an absolute divorce, but there is nothing in the record to indicate upon which of the several statutory grounds the divorce was secured. The decree awarded to the mother the custody and guardianship of their only child, Dorothy May Crise, and charged the father with this infant's support and maintenance. Since the divorce, the mother has married George F. King, Jr., with whom she and the daughter reside in Florida; and the trustees have continued to pay a portion of the income to the divorced wife. On April 28th, 1925, Clarence L. Crise filed a petition asking that the chancellor direct the trustees to cease paying any part of the income to her, and, on September 23rd Elsie R. Crise filed a similar petition. The basis of relief was alike in each petition, which advanced the theory that the dissolution of the marriage bond between Clarence L. Crise and May F. Crise put an end to all her interest and estate under the deed of trust. The chancellor, however, held that the wife's status as a beneficiary under the deed of trust was not affected by the absolute divorce granted her husband, and dismissed both petitions.

The position of the appellants is that a divorce *a vinculo matrimonii* procured by one spouse on any ground is equivalent to the death of the spouse who has afforded the cause for the decree of dissolution. It is true that, as a general rule and independently of statute, a divorce *a vinculo* ends all rights of either spouse dependent on marriage, and not actually vested, as curtesy, dower and property rights under statutes of distribution, but as a rule transfers of property and contracts executed before divorce are not affected by the dissolution of the marital tie. Thus, if a tenancy by entirety

exists, a divorce *a vinculo matrimonii* is not equivalent in law to the natural death of the guilty spouse, but merely effects a destruction of one of the essential unities upon whose continuance the estate depended; and, so, the severance of the unity of husband and wife by a complete divorce operates to make the divorced parties hold as tenants in common, no matter whose was the marital fault. *Reed v. Reed,* 109 Md. 690, 693; *Masterman v. Masterman,* 129 Md. 167; *Brell v. Brell,* 143 Md. 443; *Stellz v. Shreck,* 128 N Y. 263. The decree of dissolution in a divorce *a vinculo* is a determination of the marriage contract by a method unknown to the common law (*Wright v. Wright,* 2 Md. 428, 447, 451); and hence it is that all contractual or property rights of either spouse, not arising out of and dependent upon the continuance of the marriage status, survive the divorce *a vinculo,* and fall within the scope and operation of the rules and principles governing similar contractual or property rights. So, the general rule, deducible from the great weight of authority, is that a marriage settlement, which was valid in its formation and which was not fraudulently induced in contemplation of the subsequent marital misconduct, is not abrogated by the divorce of the parties for marital misconduct arising after the marriage, unless the language of the instrument or contract contains an express provision against the conduct in question.

This rule is sound in principle, and finds support in the decisions of this Court in *Michael v. Morey,* 26 Md. 239, 262 to 265; *Kremelberg v. Kremelberg,* 52 Md. 553, 563, 565, 573-575, 581; *Schnepfe v. Schnepfe,* 124 Md. 330, 342-345, and also in the clear preponderance of authority. See 2 *Bishop on Marriage, Divorce and Separation,* secs. 1654-1659; 3 *Pomeroy's Equity Jurisprudence* (4th ed.), sec. 1110; 29 *A. L. R.* 198 *et seq.;* 35 *A. L. R.* 139 and note; *Blount v. Winter,* 3 P. Wms. 276, 24 Eng. Reprint, 1063; *Jee v. Thurlow,* 2 Barn. & C. 547, 107 Eng. Reprint, 487; *Fearon v. Aylesford* (1884), L. R., 14 Q. B. 792; *Wasteneys v. Wasteneys* (1900) A. C. 446; *Fitzgerald v. Chapman,*

L. R. 1 Ch. D. 563 (overruling *Fussell v. Dowding*, L. R., 14 Eq. 423, and *Wilkinson v. Gibson*, L. R., 4 Eq. 162); *Burton v. Sturgeon*, L. R., 2 Ch. D. 318; *Codrington v. Codrington*, L. R., 7 H. L. 854;*Evans v. Carrington*, 2 De G., F. & J. 481, 45 Eng. Rep. 707; *Norris v. Norris*, 1 Swab. & Tr. 174, 164 Eng. Rep. 680; *Charlesworth v. Holt*, L. R., 9 Exch. 38; *Sweet v. Sweet* (1895), 1 Q. B. 12; *Baynon v. Batley*, 8 Bing. 256, 131 Eng. Rep. 400; *Goslin v. Clark*, 12 C. B. (N. S.) 681; *Sidney v. Sidney*, 3 P. Wms. 375, 24 Eng. Rep. 1060; *Seagrave v. Seagrave*, 13 Ves. 443, 33 Eng. Rep. 358; *Buttlar v. Buttlar*, 67 N. J. Eq. 136; *Galusha v. Galusha*, 116 N. Y. 635; *Babcock v. Smith*, 22 Pick. (Mass.) 61; *Chase v. Phillips*, 153 Mass. 17; *Kinsey v. Kinsey*, 115 Mo. 496; *Dixon v. Dixon*, 23 N. J. Eq. 316; *Warren v. Warren*, 88 N. J. Eq. 612; *Lister v. Lister*, 35 N. J. Eq. 49, 37 N. J. Eq. 331; *Converse v. Converse*, 9 Rich. Eq. (S. C.) 535.

It follows that an existing trust, which was not involved in the divorce proceedings, is not abrogated by the divorce, and that the rights of the *cestuis que trustent*, which were created and became fixed upon the execution and delivery of the deed of trust, can not be impaired by litigation between these *cestuis que trustent* in respect to other matters, but must be ascertained and declared from the true intent and meaning of the language of the deed of trust, which is to be liberally construed within the bounds of the natural and unconstrained import of the provisions of the entire instrument when considered in connection with its general scope and purpose. *Cooney v. Woodburn*, 33 Md. 320, 326-328; *Jones v. Brown*, 1 Md. Ch. 191, 195.

2. The deed of trust contains nothing which in terms, or by necessary implication, made the right of either spouse to a share in the income depend upon either the continuation of coverture, or a conjugal survivorship rather than a survivorship resulting from the antecedent natural death of the other spouse. *Hill v. Safe Deposit and Trust Co.*, 101 Md. 60. As plain and clear as language can express an inten-

tion, the trust was created to continue during the lives of
both, and, upon the natural death of one, then to continue
until the natural death of the spouse surviving. At the time
of the creation of the trust, the marriage existed, and the
addition of the words "his wife" after the name of May F.
Crise, in four out of the six times their names appear in con-
junction, did not affect the meaning of the document, but
was simply descriptive of the person, and not of the char-
acter in which the wife was to take. No court would be
justified in laying stress upon the presence of two words
so commonly added in legal writings to identify a woman,
especially where, as in the deed now under consideration,
the term has been omitted in two instances of equal signifi-
cance with the remaining four instances where the full
names of both husband and wife appear together. More-
over, the income was not payable to the wife *qua* wife, be-
cause, by the express terms of the instrument, it contem-
plated the unbroken continuation of the payments of in-
come to her until her death, which involved the possibility
of receipts of income as widow after the termination of
coverture by the husband's death. If she had survived her
husband, it must be admitted that her right to the income
would not have been lost by either subsequent marriage or
unchastity. In the case of *Rebecca Bullock v. Benjamin
Zilly, Executor of John Bulcher*, 1 N. J. Eq. (Saxton),
489, we find that a testator gave to trustees his estate to
invest, and provided that the income from one-half of the
principal sum should be "paid annually to the support and
maintenance of his nephew, Thomas Bullock and Rebecca,
his wife, and their children." Some time after the testa-
tor's death, the Legislature of New Jersey granted a full
divorce to Thomas Bullock from his wife Rebecca, and there-
after the trustees declined to pay Rebecca any part of the
income on the ground that the marriage had been dissolved,
and that Rebecca was only entitled to a benefit under the
will so long as she was the wife of Thomas Bullock. In that
case, as in the instant case, the grounds upon which the par-

ties were divorced did not appear, but the court was of the opinion that this was immaterial, as the legal rights of the parties under the will could not be changed by the grounds for the divorce. The chancellor further held that the wife took a personal and individual interest in the bequest, despite the words "his wife" following her name, and that she was entitled to her bill in equity for maintenance out of the income of the bequest, notwithstanding the divorce *a vinculo* obtained by her husband. See 2 *Bishop on Marriage, Divorce and Separation,* sec. 1659.

If the parties had intended that, upon the dissolution of the marriage, the spouse at fault should no longer be entitled to any share in the income of the trust fund, the common provision to that effect could have been incorporated in the deed of trust. *Woods v. Richardson,* 117 Mass. 276. The failure to limit the right of either the wife or the husband in the income to the period of coverture, or so long as either should remain chaste or guiltless of any cause for divorce, may now be an occasion of regret to the husband, as he finds his wife receiving under the settlement more than she is entitled to by law, but the parties had the privilege of leaving their property to the operation of the general principles of law or of controlling and regulating its use and enjoyment by special restrictions and limitations, and a court of equity will not relieve them of the consequences of a choice when voluntarily and understandingly made. Although the misconduct of a spouse may forfeit at law rights of dower or curtesy, yet, unless so stipulated, marital misconduct will not work a forfeiture of vested contractual rights which are preserved by the terms of a valid deed of trust. The wife united in the deed to the settlor for the purpose of having the post-nuptial settlement made according to the terms of the deed of trust. By so doing she released her potential right of dower in the freehold estate of her husband, and she thereby became a purchaser for value with respect to her beneficial interest under the deed of trust. A court cannot assume that she would have consented to the settlement except

upon the subsisting terms of the deed of trust, and she is entitled to have it enforced against her then husband according to its terms. *Supra, and Sykes v. Chadwick,* 18 Wall. (U. S.) 141; *Unger v. Price,* 9 Md. 552, 557, 558; *Stockett v. Holliday,* 9 Md. 480, 498; *Clark v. Killian,* 103 U. S. 766; *Jones v. Clifton,* 101 U. S. 225; *Atkinson v. Phillips,* 1 Md. Ch. 507; *Niller v. Johnson,* 27 Md. 6; *Myers v. King,* 42 Md. 65; *Hinkle v. Wilson,* 53 Md. 287. See *Newbold v. Newbold,* 133 Md. 170; *Emerson v. Emerson,* 120 Md. 584, 598, 599.

3. The cases of *Lee's Estate,* 207 Pa. St. 218; *Cary v. Slead,* 220 Ill. 508; *Estate of Peter Cornils et al. v. Cornils,* 167 Iowa, 196, which were cited by the appellants, are similar to a number of others, which constitute a class whose distinguishing and definitive characteristic is that the instruments there in question make plain that the chief object of the settlement was to protect one spouse from the other in the use and enjoyment of the property during coverture. The decisions mentioned are grouped with some others of the same type in a note found in 57 *L. R. A.* (N. S.) 1915 E, pp. 762-764. The object of the trust or settlement in this class is fully accomplished, according to the clear meaning of the instrument, when the coverture ceases through its dissolution either by death or by divorce, and so the trust is declared terminated upon the familiar principle that a trust will be determined when the purposes for which it was created are accomplished. 2 *Perry on Trusts* (7th Ed.), sec. 920.

The trust settlement here falls outside this class. The purpose of this settlement was not to protect, during coverture, one spouse from the other in the use and enjoyment of the property conveyed in trust, but to assure to both husband and wife a common beneficial right in the net income of the estate "so long as the said Clarence L. Crise and May F. Crise and the survivor of them shall live." This intention was further enforced by permitting the income to be paid to either spouse under a spendthrift clause, which was

designed to prevent either beneficiary from assigning or otherwise disposing of the interests in the income, and any creditor from subjecting the income to his claim. And, finally, by mandatory and unambiguous language the settlor provided that the beneficial interest under the settlement was to be enjoyed by each spouse until death. The rights of the parties here are not those. which have their origin in the status created by the contract of marriage, but are those which depend upon what was actually agreed to in a particular contract, whose meaning is to be ascertained from the deed of trust, which formulated in writing the final and complete obligations and rights of the respective parties. The argument of the appellant involves the intrusion into this deed of a provision, which is not only foreign to the intention of the parties as expressed in language of their own choosing, but which also eliminates a contractual right that the settlement secured not only to the wife, but also to the husband. The answer to this argument "is shortly and simply this, that the Court has no power to introduce any such condition into this deed, however proper and reasonable in a moral and social point of view it might be to do so." *Kremelberg v. Kremelberg,* 52 Md. 565; *Chase v. Phillips,* 153 Mass. 17; *In re Rosecrantz,* 183 Wis. 643, 35 A. L. R. 139-144.

4. The only child of the couple is an infant daughter, so her mother and father and this infant are entitled to support out of the net income. In the decree of divorce the father is charged with her support and maintenance, but the guardianship and custody of the daughter is committed to the mother, with whom the child lives. The record disclosed that the trustees have been paying to the mother some of this yearly income, but neither the amount nor the proportion is shown. Nor does it appear if the father is discharging his primary obligation to support the minor out of his own private funds. In the absence of any facts to the contrary, the Court will assume that the income is being fairly divided, with due regard for the intention of the settlor,

the nature and character of the trust reposed in them, and the relative obligations and rights of the three *cestuis que trustent.* If any question should arise in respect to the distribution of the income, the trustees may obtain the advice and direction of the equity tribunal which is supervising the administration of the trust. *Pole v. Pietsch,* 61 Md. 570, 572.

For the reasons stated, the decree of the lower court should be affirmed.

*Decree affirmed, with costs to the appellees.*