MARTHA HAMPTON, PLAINTIFF-APPELLANT, v. HAMPTON HOLDING COMPANY, *ET AL.*, DEFENDANTS-RESPONDENTS.

Argued January 10, 1955—Decided February 14, 1955.

**434**

*Mr. John P. Holly* argued the cause for appellant.

*Mr. Herman E. Dultz* argued the cause for respondents.

The opinion of the court was delivered by

HEHER, J.   By this proceeding in equity plaintiff seeks an assignment of dower in lands situate in Newark, New Jersey, known as 138-146 Norfolk Street and 9 Tuxedo Parkway, dowable it is affirmed as property of which her deceased husband, Robert, had the beneficial seisin in his lifetime.

As to the Norfolk Street tract, the gravamen of the action is a premarital conveyance to the defendant corporation designed to defeat plaintiff's expectation of dower by the fulfillment of their engagement to marry, and thus in fraud of an essential property right.   And it is alleged that at the time of his death the deceased had the equitable ownership of the Tuxedo Parkway property within the intendment of *R. S.* 3:37-1, now *N. J. S.* 3A:35-1.

In the Chancery Division of the Superior Court, the complaint was sustained as to the Tuxedo Parkway premises, but otherwise dismissed for failure of proof of fraud. The dower interest in that property was assessed at $4,094.96. On cross-appeals, the Appellate Division affirmed the dismissal in respect of the Norfolk Street lands as a claim barred by laches, but directed a dismissal also as to the Tuxedo Parkway property as involving an interest relinquished by a release in due form of law. 31 *N. J. Super.* 80 (1954).

The case is here by certification at the instance of plaintiff.

## I.

Norfolk Street:

The contention here is that a voluntary conveyance of real property by one "who contemplates marriage, made without the knowledge or consent of his intended wife," is *prima facie* a "fraud against her dower right" in the lands, and the burden is cast on the grantee to "establish the validity of the deed." These cases are cited, among others from outside jurisdictions: *Smith v. Smith,* 6 *N. J. Eq.* 515 (*Ch.* 1847); *Wildeman v. Wildeman,* 98 *N. J. Eq.* 109 (*Ch.* 1925). Compare *Chandler v. Hollingsworth,* 3 *Del. Ch.* 99 (*Ch.* 1867), distinguishing between actual fraud, such as a representation of ownership made to the intended spouse followed by a secret conveyance, and "constructive" fraud, involving mere nondisclosure of ownership.

The insistence is that in the case at hand there was neither a legal nor an equitable duty owing to the grantee serving to rebut the presumption of fraud upon the betrothed's marital rights; and so the intent to defraud is deducible from the conveyance itself. *E. g. Williams v. Carle,* 10 *N. J. Eq.* 543 (*E. & A.* 1856); *Champlin v. Champlin,* 16 *R. I.* 314, 15 *A.* 85 (*Sup. Ct.* 1888); *Ward v. Ward,* 63 *Ohio St.* 125, 57 *N. E.* 1095, 51 *L. R. A.* 858 (*Sup. Ct.* 1900); *Dunbar v. Dunbar,* 254 *Ill.* 281. 98 *N. E.* 563 (*Sup. Ct.* 1912).

■ The Chancery Division resolved the issue of fraud against plaintiff. It was there found that "the reason for the transfer was to give" the grantor Hampton's "sons the property which was created by virtue of the efforts of the three," and there was no ground for holding that "it was done in fraud"; the corporation "was not formed for the purpose of defrauding plaintiff of dower" in the premises, nor was the conveyance to the corporation made "for the purpose of depriving" her of dower; and the judgment is defended as well founded in fact and in law. Recourse is had to the general rule that an antenuptial conveyance "made in good faith" will defeat dower. *Frank v. Frank's Inc.*, 9 *N. J.* 218 (1952), is deemed apposite. And it is urged that, at all events, relief is barred by laches, the ground taken by the Appellate Division.

The essence of the plea of laches is that plaintiff is chargeable with undue delay in undertaking enforcement of her claim for dower, prejudicial to defendants on the merits; and we shall now consider the reasoning in the context of the factual background offered in support of the plea of inexcusable delay.

The marriage was celebrated June 15, 1939, following an engagement made the prior April 13. Hampton was then 66 or 67 years of age, and his wife, 37. On the intervening April 26 Hampton and his two sons, Robert F. and Charles J., formed the defendant corporation, each taking 20 shares of the capital stock, and on June 7 following the conveyance of the Norfolk Street premises was made to the corporation. It is said that Hampton thereby designed to "reward" his sons, helpers in his long-established roofing business, "for their efforts" in establishing a "successful enterprise," "which enabled him to accumulate his estate." The property thus conveyed was used in part for the operation of the roofing business.

On May 18, 1942 Hampton and his wife entered into articles of separation whereby they "mutually" waived, released and barred "themselves of all right of dower or curtesy in and to any and all real property that either now owns or may

hereafter own or acquire," and agreed to execute and deliver good and sufficient releases of dower or curtesy, each to the other, on request, and to join in the execution of "any deed of any real property now or hereafter owned or acquired by either." Hampton made an express "representation," "for the purposes of this agreement," that "he now owns only one piece of real estate and that is the home in which both parties presently reside, located at 9 Tuxedo Parkway," in Newark, "which premises are free and clear and for which premises" Martha "will simultaneously with the execution of this agreement release her dower" and execute "any other instrument in connection with the transfer or conveyance" of the premises as her husband should require. Martha agreed to accept $1,750 "for the release of her dower," and $3,250 "as a satisfactory, reasonable and just compensation for her future support and maintenance"; and Robert undertook to pay Martha's counsel a fee of $250 for his services in her behalf. The agreement recites that Robert was ready and willing to "support and maintain" Martha "as long as she remained his wife," and he was able, but that Martha had voiced "her desire" for "a lump sum of money for her future support and maintenance as well as for her release in dower, and receiving advice of able counsel in her behalf," they had agreed "upon what is a reasonable provision" for her support and maintenance. The payments thus provided for were made; and Martha concurrently therewith executed, acknowledged and delivered to her husband a release of her dower interest in the Tuxedo Parkway lands, and joined him in a deed of conveyance of the lands to his son Charles J., who on December 5, 1946, his wife joining, conveyed the premises to the corporation. Martha was represented throughout the proceedings by counsel of her own choosing, of unquestionable capacity, skill and repute.

Robert and Martha lived apart until December 1950, when they became reconciled; and thereafter they cohabited at the Tuxedo Parkway residence until Robert's death on May 29, 1952. This action for dower was brought shortly thereafter. It was alleged that the Norfolk Street conveyance was in

fraud of dower, and the release of dower in the Tuxedo Parkway premises was had by duress, coercion and intimidation practiced by her husband and for an inadequate consideration, and the property was held "to his use," and so the rightful subject of dower under *R. S.* 3:37–1. This attack on the validity of the release is not pressed here, a concession that it has no support in the proofs.

The point of undue and prejudicial delay proceeds on the assumption that the separation agreement indicates Martha then had knowledge of the conveyance of the Norfolk Street property, and that on her own admission of knowledge either in January of 1951 or "the beginning of 1952," and consultation with counsel at the time, she took no action until after her husband's death. The argument is that "While plaintiff delayed, decedent died," and thereby defendants "lost indispensable evidence to establish a bar—that plaintiff knew of the transfer, when she married decedent, and acquiesced therein." The principle of *Wilkinson v. Sherman*, 45 *N. J. Eq.* 413 (*Ch.* 1889), affirmed *sub nom. Wilkinson v. Scudder*, 47 *N. J. Eq.* 324 (*E. & A.* 1890), is invoked.

But while action during her husband's lifetime would be necessary to preclude the intervening rights of an innocent purchaser for value without notice, Martha had no right of action for dower until the death of her husband. Inchoate dower is an ancient legal attribute of the marriage relation; it arises from a concurrence of beneficial seisin and coverture. *R. S.* 3:37–1, now *N. J. S.* 3A:35–1. Inchoate right of dower in New Jersey is a "present fixed and vested valuable interest" of a wife in her husband's estate of inheritance in lands, subject to divestiture by the death of the wife in the lifetime of the husband. *Katz v. Farber*, 4 *N. J.* 333 (1950). Inchoate dower does not become consummate and actionable until the husband's death; but it is nevertheless an interest in property within the protective jurisdiction of equity, even where it is deemed to be a "mere expectancy or possibility." *In re Cropsey Ave. in City of New York*, 268 *N. Y.* 183, 197 *N. E.* 189, 101 *A. L. R.* 694 (*Ct. App.* 1935); *Higgins v. Higgins*, 219 *Ill.* 146, 76 *N. E.* 86 (*Sup. Ct.* 1905). A wife

has an action to set aside conveyances made by her husband to defeat her expectation of dower, although not yet vested even as an inchoate right. *Bookout v. Bookout*, 150 *Ind.* 63, 49 *N. E.* 824 (*Sup. Ct.* 1898); *Collins v. Collins*, 98 *Md.* 473, 57 *A.* 597 (*Ct. App.* 1904); *Cranson v. Cranson*, 4 *Mich.* 230 (*Sup. Ct.* 1856); *Beechley v. Beechley*, 134 *Iowa* 75, 108 *N. W.* 762, 9 *L. R. A., N. S.*, 955 (*Sup. Ct.* 1906). See 17 *Am. Jur.* 764. The period of limitation begins to run at the date of the husband's death. *Conover v. Wright*, 6 *N. J. Eq.* 613 (*E. & A.* 1848).

Delay may be attended by circumstances so gross as to preclude relief on the plainest principles of equity and good conscience, such, for example, as deliberate delay to put beyond the reach of the adverse party evidence crucial to the issue, and thus to perpetrate a fraud. But that is not the case here. It is to be borne in mind that we are here concerned with the marital relation and its security as a social unit basic to our institutions, indeed fundamental in civilized society, a policy that is not served by imposing the ordinary jural consequences of laches on delay by the parties in invoking remedial legal process as against each other during coverture, or even while separated where, as was the case here, reconciliation was not an unreasonable prospect. *Ward v. McLellan*, 117 *N. J. Eq.* 475 (*E. & A.* 1935); *Reeves v. Weber*, 111 *N. J. Eq.* 454 (*E. & A.* 1932); *Alpaugh v. Wilson*, 52 *N. J. Eq.* 424 (*Ch.* 1894), affirmed *Id.*, 52 *N. J. Eq.* 589 (*E. & A.* 1894).

But there is no occasion to pursue the inquiry. We concur in the Chancery Division's finding that the particular conveyance was not designed to work a fraud on Martha's marital rights. There is no showing of bad faith; and the want of good faith is not a peremptory inference as a matter of law. *Frank v. Frank's Inc.*, cited *supra; Telis v. Telis*, 132 *N. J. Eq.* 25 (*E. & A.* 1942).

True, Martha testified that before the marriage Robert "many times took" her "down and showed" her "his office and the property on occasions when" she "was visiting him," and told her on occasion that if she married him she "would

never be sorry," and she was unaware of the conveyance until after the resumption of cohabitation. But concealment or noncommunication of the making of the conveyance does not of itself give rise to an irrebuttable inference of fraud on the marriage, even though the transfer may be voluntary in legal contemplation. Such is the current of authority; and it would seem to be a rule grounded in right reason and justice. Ordinarily, good faith measures the juridical consequences of a conveyance of this class; and good faith in turn depends upon the particular circumstances. There are cases in other jurisdictions holding that the essential inquiry is whether the conveyance was in reality motivated by an intention reasonably to provide for children of the earlier marriage and not to defraud the spouse of the later marriage, and the advancement was not itself extreme and unjust in degree. *Daniher v. Daniher*, 201 *Ill.* 489, 66 *N. E.* 239 (*Sup. Ct.* 1903); *Noah v. Noah*, 246 *Mich.* 324, 224 *N. W.* 611 (*Sup. Ct.* 1929); *Connelly v. Ford*, 202 *Mich.* 558, 168 *N. W.* 411 (*Sup. Ct.* 1918). But we need not go so far here.

It was said by the Master of the Rolls, Lord Langdale, in *England v. Downs*, 2 *Beav.* 522, 48 *Eng. Repr.* 1284 (1840), where a widow, having her second marriage in contemplation, settled her property on herself for life, for her separate use, with remainder to the children of her first marriage:

"The equity which arises in cases of this nature depends upon the peculiar circumstances of each case, as bearing upon the question, whether the facts proved do or do not amount to sufficient evidence of fraud practiced on the husband."

It was there held that if a woman entitled to property, during the treaty for marriage, represents to her intended husband that she is so entitled, that upon the marriage he will become entitled *jure mariti*, and if during the same treaty she clandestinely conveys away the property in such manner as to defeat his marital right, and secure to herself the separate use of it, and the concealment continues until the marriage, a fraud is thus practiced on the husband, and he is entitled

to relief; that direct misrepresentations, or willful concealment with intent to deceive the husband, would entitle him to such relief, and if both the property and the mode of its conveyance pending the marriage treaty be concealed from the intended husband, there is still a fraud practiced on him, but cases have occurred in which concealment, or rather the nonexistence of communication to the husband, has not been held fraudulent, and whether fraud is made out must depend on the circumstances of each case.

Death has sealed the lips of Robert. Yet the circumstances reasonably give ground for the conviction that the conveyance was induced by a sense of duty to offspring who had labored faithfully and well for the success of the business and the father's appreciation of growing dependency in his declining years. It remains to consider whether there was a concealment of the transfer in itself a fraud upon the marriage. Plainly, there was not. The articles of separation reveal beyond a peradventure that Martha then knew her husband was no longer the owner of the Norfolk Street premises and that she did not regard the transfer as in fraud of dower. She was fully compensated for her dower interest in the Tuxedo Parkway property, also conveyed to the corporation. There was no claim of dower in the Norfolk Street lands. She knew the latter premises were in part devoted to the roofing business. She was not aware of any intrusion upon her marital rights by such disposition of the property; and thus, by her conduct, she acknowledged that this parcel was not the rightful subject of dower. The separation agreement barred all right of dower or curtesy in "any and all real property that either now owns or may hereafter own or acquire"; and they agreed to execute releases of dower or curtesy, one to the other, and to join in executing "any deed of any real property now or hereafter owned or acquired by either." There is no suggestion of oppression or imposition in the making of the settlement, or in the terms of the agreement. Martha had the benefit of competent independent advice from experienced counsel of her own selection; she had his professional representation and counsel throughout

and at the final meeting when the agreement was executed and the stipulated payments made, and there can be no doubt that hers was a knowing and understanding execution after her counsel's revelation of the full significance and import of the agreement. The implications of her act are inescapable.

## II.

Tuxedo Parkway:

The point here is that the design of section 17 of the Married Persons Act, *R. S.* 37:2–17, was the removal of the common-law disability of a married woman "to dispose of her separate property," but not to enable a wife to release dower directly to her husband. It is conceded that dower and curtesy are now subject to release directly, by one spouse to the other, in virtue of *L.* 1953, *c.* 352, effective August 8, 1953, as amended by *L.* 1954, *c.* 21, effective May 3, 1954, *N. J. S. A.* 37:2–18.1.

At common law, upon the principle of mutual disability and upon the presumption that the wife is *sub potestate viri*, a husband and wife may not contract with one another, and a wife cannot execute a valid release of dower in the real estate of her husband, in any other way than by joining with him in a conveyance to a third person. But while void at law, in New Jersey postnuptial agreements between husband and wife for the release of dower have ever been enforceable in equity, if fair and equitable and sustained by an adequate consideration, and the wife's consent has been understandingly given uninfluenced by fraud, deceit, oppression or duress. *Ireland v. Ireland*, 43 *N. J. Eq.* 311 (*Ch.* 1887). See *Bendler v. Bendler*, 3 *N. J.* 161 (1949); also *Van Koten v. Van Koten*, 323 *Ill.* 323, 154 *N. E.* 146, 50 *A. L. R.* 347 (*Sup. Ct.* 1926); *Crise v. Smith*, 150 *Md.* 322, 133 *A.* 110, 47 *A. L. R.* 467 (*Ct. App.* 1929). And see annotation in 49 *A. L. R.* 116.

By such criteria, the release of dower is unassailable.

It is insisted that, even so, the separation agreement could have "no effect on dower" for want of an acknowledgment

deemed requisite by *R. S.* 3:37–1, now *N. J. S.* 3*A*:35–1, and also that the agreement was "purely executory in nature" and was abrogated by the "subsequent reconciliation and cohabitation of the parties."

But in this regard the agreement was fully performed—a *fait accompli*. The dower was released and the agreed value of the interest paid. Martha concurrently executed, acknowledged and delivered to her husband a release of her dower right and joined her husband in a duly acknowledged deed of conveyance of the lands to Charles J. Hampton, who later made a conveyance to the corporation. The reconciliation did not constitute a rescission or annulment of the release of dower, an executed settlement and adjustment of the interests of the parties in the property, supported by a sufficient consideration, that was not made to depend for its continued efficacy on the continuance of the separation. The question is ordinarily one of intention. Compare *Smith v. Terry*, 38 *App. Div.* 394, 56 *N. Y. S.* 447 (*App. Div.* 1899), affirmed 166 *N. Y.* 632, 60 *N. E.* 1120 (*Ct. App.* 1901); *Mach v. Baranowski*, 152 *Md.* 53, 136 *A.* 34 (*Ct. App.* 1927); *Garrett v. Kirtley*, 97 *W. Va.* 484, 125 *S. E.* 347, 40 *A. L. R.* 1222 (*Ct. App.* 1924). And see annotation of cases in 40 *A. L. R.* 1227; also 42 *C. J. S., Husband and Wife*, § 599, *p.* 186.

And the property was not held by the corporation "to the use" of Robert at the time of his death, within the intendment of *R. S.* 3:37–1, now *N. J. S.* 3*A*:35–1.

Attention is directed to the life estate reserved to Robert by the deed of conveyance to the corporation, the payment of $10,000 to him by the corporation for the transfer, the expenditure by the corporation of substantial sums for the maintenance of the property, and the expressed "desire" of Robert that his son, Robert F., be given leave to purchase the property for $8,000; and it is said that "these facts clearly indicate" that the deceased "never parted with beneficial ownership"; he "held everything but the bare legal title." The argument continues that if, by the conveyance to Charles J. Hampton, plaintiff completely divested herself of dower,

"then her dower right arose anew in the equitable estate created by the subsequent holding of the corporation," just as if the "legal title" had been conveyed to her husband.

But a life estate, and such it was here, is not in its very nature an estate of inheritance. Compare *Heldhauser v. Schulz,* 93 *N. J. Eq.* 449 (*E. & A.* 1922); *Cummings v. Cummings,* 76 *N. J. Eq.* 568 (*Ch.* 1910). The corporation did not hold the lands "to the use" of the deceased in the statutory sense. The case is clearly within the principle of *Frank v. Frank's Inc.,* cited *supra.* Moreover, Martha has had adequate compensation for her dower interest in the property.

The judgment of the Appellate Division directing dismissal of the complaint is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING and JACOBS—6.

*For reversal*—None.