JOSEPH MULFORD and wife *vs.* SARAH F. HIERS and others.

In proceedings for partition, where after a sale of the premises the widow who was entitled to dower therein, had agreed in writing under her hand and seal, according to the statutes of this state, to accept in lieu of her said dower such sum in gross as the Chancellor should deem reasonable, and then having died before distribution, it was *held*, that the right vested in the widow to receive a sum in gross, interest could not be divested by her death, but should go to her children. *Held further*, that the value of the widow's interest should be ascertained on the principles of life annuities.

Where the estate is ordered to be sold, and the widow agrees to accept a gross sum in lieu of dower, and she dies before a sale of the premises, her estate is determined by her death, and her children can have no claim to any portion of the proceeds of the sale.

THE CHANCELLOR. On the 15th of January, 1857, a bill was filed for the partition of the real estate of Garret Hiers, deceased. Hiers died intestate, leaving him surviving a widow, Sarah F. Heirs, four children, by the said Sarah, and two children, the issue of a former marriage.

The master having reported that a partition could not be made without great prejudice to the owners of the premises, on the 18th day of January, 1858, by a decree of the court, it was ordered that the same should be sold, and that the master should, with the said premises, sell the estate in dower of the said Sarah F. Hiers, widow of the said Garret Hiers, in the same. In pursuance of this order, a part of the real estate was sold on the 26th and 27th of March, 1858, and the sale was confirmed on the 30th of April following. The residue of the land was sold on the 27th of November, 1858, and the sale confirmed on 1st of January, 1859. On the 30th of September, 1858, the widow filed a consent in writing, under her hand and seal, to accept, in lieu of her estate in dower, such sum in gross out of the proceeds of the sale of said lands as should be deemed by the Chancellor a just and reasonable satisfaction for such estate and interest. On or about the 18th of October, 1858, the widow died intestate. On behalf of her infant children it is insisted that, in making distribution of the proceeds of the sales of the land, they are entitled to receive such sum as may be deemed a just and reasonable satisfaction for the estate in dower of their mother in the land, in addition to their dividends as heirs at law. This claim is resisted by the children of Garret Hiers by his first marriage, who insist that, by the death of the widow prior to the decree for distribution, her interest, as well in the proceeds of the sale as in the land itself, was determined, and that the moneys arising from the sale must be distributed among the heirs without regard to her claim. So far as relates to the proceeds of the sale of that portion of the land which was sold after the death of the widow, it is clear that her children can have no claim in virtue of her right of dower. It is true that the estate in dower of the widow was, by a decree of the court, ordered to be sold, but in point of fact the estate was determined by the death of the widow before the sale. No sale of the dower right was ever made, and consequently there are no proceeds of the sale which the wi-

dow could be entitled to have invested for her benefit, or in lieu of which she could receive a sum in gross.

But in regard to the sales which were made and confirmed in the lifetime of the widow, her children are entitled to receive out of the proceeds of the sale a just and reasonable satisfaction for their mother's interest. Under the act of 1846, (*Nix. Dig.* 576, § 23,) the widow's dower could only be sold in proceedings upon an application for partition upon the widow's signifying her assent to relinquish her dower, by writing under her hand and seal, before or at the time of the sale; and upon giving such assent, she became, by the terms of the act, entitled to have one-third of the proceeds of the sale invested under the direction and control of the court for her benefit during life. The right to the equivalent is, by the terms of the act, vested in the widow, upon her consent to the sale. By the act of 1855, (*Nix. Dig.* 578) the sale of the dower right may be made at the discretion of the court without the consent of the widow; and upon such sale being made, if the widow consent in writing before making the order of distribution to accept a gross sum in lieu of her estate, the statute requires that the court shall direct the payment of such sum in gross out of the proceeds of the sale. The right of the widow to receive such equivalent becomes vested upon her filing her consent to accept it. She is bound, by her consent, to such acceptance, and it is just that the obligation should be mutual. The right vested in the widow to receive a sum in gross for her estate cannot be divested by her death. It is tantamount to an agreement to relinquish her right to the estate and to the interest of one-third of the proceeds for life for a sum certain, not specified in the agreement, but referred to the discretion of the court, to be exercised upon fixed and well established principles.

The estate in dower is a favorite of the law, and as the doweress is divested of her estate in the lands by order of the court for the benefit of the heirs, it is just and equitable that the compensation in gross, which she agrees to

accept in lieu of her estate, shall be deemed to be absolutely vested in her by her agreement to accept the equivalent which the law has offered to her acceptance. If the law had left to the widow her election whether or not to consent to a sale of her dower upon receiving a sum in gross in lieu of her estate, and she had given such consent, undoubtedly the widow would have had a vested right to such equivalent immediately upon the sale being made. That the law has deprived her of her estate without her consent, and merely gives her an election as to the mode of payment, does not impair her equitable title to the equivalent.

If she had voluntarily contracted for the sale of her estate for a fixed sum, her children would have been entitled to the benefit of the contracts. Upon the clearest principles of equity, she should stand in no worse position when her property has been sold without her consent.

But again, as between the widow and the heir, what title has the heir to this money. Undoubtedly, at the sale, the purchaser paid for the widow's estate what it was then estimated to be worth.

The value of the dower at that time was added to the price paid for the land. The purchaser has paid a larger price for the dower than it has proved to be worth. Had it been anticipated that the widow would have died within a year, the fund now in court would be less. What title have the heirs to this fund? Why should not the estate of the widow be entitled to the price for which her estate was sold? I entertain no doubt, either upon the language of the statute or upon the principles of equity, that the equivalent for the dower is vested in the doweress, and should go to her children in the distribution of the funds.

The value of the dower is to be estimated as it existed at the time of the consent given to accept an equivalent, and according to the principles adopted by the court in ascertaining the value of dower in other cases. Such was

the rule in the Court of Chancery of New York under a similar statute, and I think the rule consistent with justice. It is to the interest of the parties interested in the land that the widow should consent to accept a gross sum in lieu of her dower, rather than to leave one-third of the proceeds locked up for an indefinite period, and exposed to the hazards of investment. It is important, therefore, that the party entitled to the life estate, as an inducement to receive an equivalent, should be made aware of the principles upon which her estate is to be valued, and the equivalent ascertained, unless, under special circumstances rendering such course inequitable, the value of the widow's interest in the premises should be ascertained on the principles of life annuities, in accordance with the practice of the court upon the sale of infants' lands. There should be a reference to a master to ascertain and report, in accordance with these principles, what would be a just and reasonable satisfaction for the widow's interest, who is entitled to receive the same, and the shares to which the parties are severally entitled.