McLaughlin *v.* McLaughlin.

---

## McLaughlin *vs.* McLaughlin and others.

1. The consent by the heirs-at-law, that a widow should take charge of the real estate of her deceased husband and collect the rents, taking such charge, and the appropriation by her of one third of the whole rents to her own use, operate as an equitable assignment of dower to the widow.

2. Where, in such a case, the widow occupied the mansion-house of her deceased husband, upon a bill filed by the heirs for an account of the rents and profits, and a reference to state an account, she was properly charged with the value of the mansion-house from the death of her husband. She was not entitled to occupy the mansion-house until dower was actually assigned, without rent: a virtual assignment had already been made.

3. A widow who claims one third of the rents of the lands of her deceased husband, other than the mansion-house and messuage, must account for the value of the part occupied by her.

4. At law, damages could not be recovered for wrongful detention of dower, if the widow died before dower was assigned, or if she accepted the dower assigned by the heir, or by proceedings in chancery; but the value of the dower, in such cases, is recoverable in equity.

5. But when a widow occupies the whole mansion-house and messuage, the only land out of which dower is claimed, from the death of the husband, she is not entitled to one third of the value, in addition, as damages.

6. Where a widow comes into equity to claim the value of her dower, in a case where such value could not be recovered at law, she will be required to do equity, and will be allowed only to recover the value of the dower detained; that is the value of one third of the whole estate, deducting the value of the part occupied by her.

7. When the estate is ordered to be sold, and the widow agrees to accept a gross sum in lieu of dower, and dies while a part of the estate is still unsold, her estate in that portion is determined by her death.

8. If a widow dies after her election to accept a gross sum in lieu of her dower, and before a report as to the amount to be allowed in gross, the fact of her death does not limit the probable duration of her life to the time of her death, but it may be taken into consideration in estimating the probable duration of her life, especially when her death was from a disease she had previously had, and there is reason to believe that she had never been wholly free from it. Evidence coming to light after such election, which shows that at the time of *election* the life was of *less* value, must be regarded; but not of an injury suffered or disease contracted after the election, which might affect the value.

On exceptions to reports of master as to the account of Abby Ann McLaughlin, deceased, and as to the value of her dower.

*Mr. W. A. Lewis,* for exceptions filed by complainant.

*Mr. Dixon,* for exceptions filed by Samuel C. McLaughlin, one of the defendants.

THE CHANCELLOR.

John G. McLaughlin died intestate, May 2d, 1861, seized of a number of houses and lots in Jersey City, in one of which he resided at his death. He left his widow, Abby Ann McLaughlin, and six children, his heirs-at-law. Two of these children were minors at his death. Some of these children were children of his widow, the others were children of his first wife. The widow remained in possession of the mansion-house until her death, on the 20th of August, 1868. Dower was never formally assigned to her. The administration of the personal estate of her husband was granted to her. By tacit consent of all the heirs who were

-of age, she assumed the management of the real estate, col-
lected the rents, paid the taxes and repairs, and rented out
such parts as it was necessary to rent.

The bill in this case was filed in her life time for a parti-
tion, and for an account by her of the rents of the estate.

The master reported that a partition could not be made
without great injury, and that the property should be sold,
and that the dower of the widow should be sold with the
lands.   The lands were all sold in the life of the widow, and
all conveyed except one lot in Green street, which, upon re-
fusal of the purchaser to comply with his contract, was or-
dered to be re-sold, and was re-sold after her death.   On
the 28th of June, 1868, the widow filed her petition electing
to accept a gross sum in lieu of her dower, and an order was
made on July 7th, 1868, to refer it to the master to ascer-
tain and compute the value of her dower.   She had, in com-
pliance with the prayer of the bill, rendered her account of
the rents and profits of the estate, in which she charged five
per cent. for collecting them, and claimed one third as due
to her in her right as dowress, but did not charge herself
with the rent of the mansion-house, and the office on the
adjoining lot, which had been occupied as such by her hus-
band, in his lifetime.   It was also referred to the master to
examine and state her account.

The master made a separate report upon each order of
reference to him.   In the report upon the order to state the
accounts, he charged her with the value of the mansion-
house from the death of her husband, or rather from May
1st, the day before his death.   To this the complainant, as
executrix of her mother, the widow, excepts, claiming that
as dower was never assigned, the widow was entitled by
virtue of the statute, to remain in possession of the mansion-
house and messuage attached, without rent, until dower was
assigned.

The master admits the right under the statute, and bases
his action on the ground that dower was virtually and
equitably assigned to the widow in the whole property by

her taking possession of the whole, with the assent of the heirs, and appropriating one third of the rents of the whole to her own use; and that the provision of the statute which was intended to protect the widow in her estate as dowress, an estate favored at law, against the injustice or delay of the heirs, was not intended to secure to her more than one third of the rents, and more than her due in a case like this, where the heirs left in her hands the whole estate to retain, by her own action, the amount due to her; that assignment of dower requires no particular form, and may, in some cases, be of one third of the tolls of a mill or of the produce of lands, which, if assigned and accepted as dower, should be equivalent to an assignment at law or in equity. To this conclusion of the master I assent. And even without such equitable assignment, I am of opinion that a widow who claims one third of the rents of the lands other than the mansion-house and messuage, must be willing to account for the value of the part occupied by her.

Damages for the detention of dower were not recovered at common law, but only by the statute of Merton; and after that statute the rule was settled by the courts of common law, that if the widow died before the damages for detention were assessed, they could not be recovered. 2 *Bac. Abr.* 395, *title Dower, I; Park on Dower* 309. Nor could damages be recovered, if the widow died before dower was assigned; nor if she accepted the dower assigned by the heir, or by proceedings in chancery. *Park* 310; *Co. Litt.* 33 *a.* But, in such cases, the value of the dower for the time it was wrongfully detained, may be recovered in equity. *Curtis* v. *Curtis,* 2 *Bro. C. C.* 629, 632; *Dormer* v. *Fortescue,* 3 *Atk.* 130; *Park on Dower* 332; *Johnson* v. *Thomas,* 3 *Paige* 377; 2 *Bac. Abr.* 396, *Dower, I; Viner's Abr., Dower S a,* § 20; *Hamilton* v. *Ld. Mohun,* 1 *P. W.* 118.

The courts of law in assessing damages for the detention, allow, as reprises, for the occupation by the widow. In *Walker* v. *Nevil, Leon.* 56, quoted in 2 *Bac. Abr., Dower I, p.* 394, the court reversed the judgment, because the damages

was for eight years, and the widow had occupied for part of the eight years. And in *Woodruff* v. *Brown*, 2 *Harr.* 246, three of the judges in their opinions say, that what had been received by the widow might be deducted from the value; this was approved in *Keeler* v. *Tatnell*, 3 *Zab.* 62. And in the case of *Hopper* v. *Hopper*, 2 *Zab.* 715, although the Court of Errors refused to order the judgment of a previous term to be altered, so as to allow a plea to be added that the defendant had satisfied the demandant for the value of her dower, yet at the inquisition which was taken under the direction of Chief Justice Green, at the Bergen Circuit, the defendant was allowed to prove, as part satisfaction of the value, or in mitigation of the damages, that the demandant had occupied one half the mansion-house from the death of her husband. And it could never be permitted where the only land out of which dower is claimed, is the mansion-house and messuage, that a widow, who had occupied the whole as quarantine from the death of her husband, should recover in addition one third of the value as damages; and yet this would be the result, if the value assessed must be one third of the whole value without regard to occupation by the widow.

And a court of equity, in such case, will not give damages beyond the amount established by law, especially when such damages are inequitable. But, on the other hand, where a widow comes into this court to claim the value of her dower, in a case where such value could not be recovered at law, she will be required to do equity, and will be allowed only to recover the value of the dower detained, that is the value of one third of the whole estate, deducting the value of the part occupied by her. This may be done by allowing her to occupy the mansion-house free of rent, and by giving her out of the residue of the estate so much as will make her part one third of the value of the whole, if anything be required for that end. On both grounds the report of the master must be sustained, and this exception overruled. The claim of the widow is unjust and inequitable. The ex-

cess of one days' rent charged by the master by mere inadvertence, may be corrected without a re-stating of the account.

The next exception to the account is that of Samuel C. McLaughlin and wife ; it is to the charge of $150, and interest on it for one years' rent of No. 147, and the upper part of No. 149, Green street. The only evidence as to this is that of Samuel C. McLaughlin himself; he testifies that he had rented of his father both premises for the year ending May 1st, 1861, at the rent of $300; that he continued to occupy them the next year without any new bargain. This usually would be a continuance of the former tenancy at the same rent, and I see nothing in this case to prevent the application of this rule. I am of opinion that this exception must be sustained.

The next exception is by the complainant as executrix and legatee of the widow, to the master's report on the value of her dower.

The report finds that she is not entitled to have a gross sum in lieu of her dower in the Green street lot, which was not sold until after her death. The report is founded on the decision of Chancellor Green, in *Mulford* v. *Hiers*, 2 *Beasley* 13, and is fully sustained by that decision ; and I concur entirely with the late Chancellor in the principles upon which that conclusion is based.

Another exception to that report is, to the principle upon which the master estimated the value of the life of the widow, and the gross value of her dower. It was held in the case of *Mulford* v. *Hiers*, above referred to, that when a dowress had, in a partition case, consented to take a gross sum in lieu of her dower, the right to have such sum estimated in proportion to the value of her life at the time of consent, became a vested right, and was not lost by her death before the value was ascertained and settled. That principle is admitted by the master, and is not disputed by the counsel for the heirs. But as she died two months after the election, and before the making of the report, the master

has assumed that the value of her life is settled by its actual duration. This assumption is strictly, and in fact, correct. The actual value of her life was at that election only two months. But this is not the manner in which the value of such a life is, in practice, ascertained in judicial proceedings. Where one is in a state of ordinary good health, and has an average expectancy of life, the value of the life is ascertained by calculation from tables prepared for annuities and life insurances, which give, with great reliability, the gross value of an annuity for a person in ordinary good health, at any given age. In such computation, death by accident, or by disease subsequently contracted, are, on principle, disregarded. It is a risk that forms part of the basis of the computation. But these tables are not a safe guide where a person is not in ordinary good health, and more especially when afflicted with a disease incurable in its nature, and so advanced as to render it probable that death will soon ensue from it. In such case the rule here applied by the master, that the actual duration of the life is the best measure of its probability, is perhaps the correct rule. But this is not such a case. Mrs. McLaughlin had some time before been afflicted, in a mild form, with the disease of which she died, but at the time of her election it had left her, and she was apparently free from it, and had the value of her life been ascertained within a month after her election, with all the evidence that could then have been produced, it might have been adjudged of an average value at her age. But although the fact of her subsequent death, within two months, ought not, in this case, to be taken as the test of the value of her life, yet the fact of a recurrence of the same disease which had previously attacked her in a milder form, and that from its virulence and rapid progress she soon died, is a most important element in judging of the value of the life. It may be with probability inferred, that the tendency to that disease had not been eradicated from her system, and that its lurking seeds only awaited development to make it fatal. Her subsequent fever, and the great and almost unnatural

appetite to which the complainant testifies, may have been and probably were the effect, and the indication of the continuance of the malady. Its development may have been started and continued by accidental causes, and its termination caused or hastened by want of skill in medical or surgical treatment; and, therefore, even assuming that she was not a healthy person at the time of her election, it does not follow that her actual life is the true legal measure of its value. I am satisfied, from the evidence, that her health was not what may be called ordinary good health, and that her life was not of the average value, at the time of the election. But it is impossible to lay down, with any accuracy, or any approach to accuracy, from the testimony, what ratio her life bore to the average value of life at her age; and I do not think that the opinions or speculations of physicians in this case, would take away much from the uncertainty. In such cases, the life insurance offices generally decline to insure at all; but this court cannot decline to act, and allow only the annual value. The statute requires that some estimate shall be made. I do not feel willing to apply the rule adopted by the master, or to estimate her life at the average value at her age. In this situation, I must adopt some mean ; the adoption must be arbitrary, and without any reason that can be assigned with certainty why it should not be a little greater or a little less. Under these circumstances I shall adopt the exact mean between the value of her dower as calculated by the master, and that calculated upon the value of a life of a person at her age in ordinary health.

The errors pointed out in the seventh exception of the complainant to the master's account being mere mistakes in carrying forward figures in the computation, and being admitted by the defendants, will of course be corrected.

The matters contained in both reports must be referred back to the master to be corrected on the principles above stated.