Sol Needles died testate on December 30th, 1936, leaving him surviving a widow and three adult children. The widow elected to take against the will and filed her bill for assignment of dower in the several pieces of real estate of which her husband died seized. Such proceedings were had thereunder that the master reported that the widow was entitled to dower "on an annual recurring allowance of $1,000, payable in equal installments of $250 each quarter of the year, on the first day of May, August, November and February in each year for the life of the complainant." This report was confirmed by order dated May 5th, 1938, and a final decree was entered October 25th, 1938, fixing the amount due at that time, which sum included "the quarterly payment of said dower" due complainant August 1st, 1938. The final *Page 110 
decree provided that the widow "is entitled to dower in and from the lands and premises of which her husband * * * died seized" and imposed a lien on said lands for that dower. The decree did not, in words, provide that in addition to the dower due the widow at the time thereof, payment of future dower should be made "on an annual recurring basis," of which more hereafter.
In fixing the amount of annual dower to which the widow was entitled the master found that the annual rental income from the property was $4,735, but that "under all of the pertinent circumstances of the case, an annual recurring allowance of $1,000 per year" should be made to the widow. As heretofore said, this report was confirmed and no effective appeal was taken from the order of confirmation or from the final decree.
Based on the master's finding, as above set forth, there was due and unpaid to the widow as of the date of her death on October 23d 1941, the sum of $5,611.43 and the administrator of Mrs. Needles' estate now petitions this court for an order that execution issue and the lands subject to the lien of dower be sold to pay and satisfy the sum due, with interest. Defendants, the three children and heirs-at-law of Sol Needles, answer denying that the amount of unpaid dower is due, or any part thereof. They also counter-claim, seeking to reduce the amount due by reason of loss of income consequent upon foreclosure sales of some of the lands subject to the dower. Their contention is that these lands represented 58% of the total income from the properties and that the amount due the widow at the date of her death, on this basis, would be $3,332.74. They also seek to set off against this sum or such sum as may be found to have been due the widow on the date of her death the amount of two judgments now held by these defendants against Mrs. Needles, totaling some $3,890.69.
The first question suggested by counsel is: Are the defendants entitled to set-off their judgments against the widow's claim for dower?
The law is clear, one of the leading cases on the subject beingBrown ads. Hendrickson, 39 N.J. Law 239, where the court said: *Page 111 
"The doctrine (of set-off of judgments) is a purely equitable one, and will be administered in all cases upon such equitable terms as will promote substantial justice. These applications being founded on no positive statute, or any fixed rule which compels the court to grant them, are addressed to the discretion of the court, and, in the exercise of that discretion, even where the set-off might legally be made, if the court sees that injustice will be done by granting the order of set-off, it should be refused."
The allowance of set-off is not a matter of right but, in a proper case, is allowed by the grace of the court, as said in theBrown Case, supra (at p. 245):
"After judgment, when the equitable power of the court asserts itself, strict rules of procedure are no longer in the way of doing exact justice, and it seems quite clear that Brown ought not to be compelled to pay a judgment recovered against him for $653 by Cyrenius Hendrickson, who is insolvent, while he holds aprior judgment against Cyrenius for more than $1,700."
Mr. Justice Garrison, in Murray v. Skirm, 73 N.J. Eq. 374
(at p. 378); 69 Atl. Rep. 496, said:
"In granting or denying applications to have one judgment set off against another courts of equity and courts of law acting upon equitable principles, exercise what is called in the books a discretion; but the discretion thus exercised is not an untrammeled one; it is conditioned upon, if not actually circumscribed by, established principles of equity. Subject, therefore, to the determination of matters that fall within these established principles, the right of offset is as determinate as is that of specific performance * * *."
And in 15 R.C.L. (at p. 823), it is said:
"In order that a judgment may be available as a set-off, it must be owned absolutely by the party seeking to use it for that purpose, but there is no objection to a party purchasing a judgment for the purpose of using it as a set-off, if this be done bona fide."
What are the facts in connection with the judgments in question? Camden Safe Deposit and Trust Company brought suit on a note drawn by Mrs. Needles in her lifetime, endorsed *Page 112 
by her husband. Judgment was entered against Mrs. Needles on March 25th, 1939. There was a nonsuit as against the Needles estate.
Merchants National Bank brought suit on a note also drawn by Mrs. Needles and endorsed by her husband. Judgment was entered against Mrs. Needles on April 18th, 1940, and a judgment of nonsuit entered against the Needles estate.
Both of the suits aforesaid were against Mrs. Needles, as well as the Needles estate and, as heretofore said, nonsuits were entered in favor of the estate in both cases, but on technical grounds, such as failure to file a claim with the executrix before the rule to bar became effective, and failure to file a claim with the executrix giving her an opportunity to dispute the claim. The judgments of nonsuit, however, were not a bar to the claims of the plaintiff banks as against the estate of Sol Needles if, in fact, the estate was liable thereon, Penrose v.Absecon Land Co., 94 N.J. Eq. 436; 120 Atl. Rep. 207, and as it will hereafter appear, the banks subsequently filed their claims with the estate and on exceptions to the account of the executor their claims were allowed against the assets of Sol Needles' estate.
At final hearing counsel for the widow called officers and employees of the two banks aforesaid in order to show the history of the notes upon which the judgments were obtained as aforesaid, and this testimony clearly demonstrated that while Mrs. Needles was the maker of both notes she acted as an accommodation maker for her husband; that the proceeds of both notes went into Sol's bank accounts and were checked out by him for his own uses and purposes, without any right in the wife so to do; that Mrs. Needles did not have a bank account in either bank; that Sol, during his lifetime, paid out of his funds interest and sums on account of principle on these notes and that Mrs. Needles did not; that after Sol's death his executrix, Mrs. Catherine Dougherty, also one of his heirs-at-law, continued to carry the notes out of estate funds and that after the judgments were obtained against Mrs. Needles, Mrs. Dougherty, as executrix of the Sol Needles estate, continued to recognize the amounts due as being chargeable against the estate. She negotiated with *Page 113 
the banks the method for the payment thereof in installments, and paid the installments from time to time out of estate funds, taking receipts in her own name as executrix. She finally negotiated settlements on the judgments with the banks and used estate funds to effect these settlements in full, i.e., she, as executrix, satisfied the full amount demanded by the banks for full settlement of the judgments. After having accomplished these results as executrix, Mrs. Dougherty had the banks assign the judgments, not to the estate, but to herself, her sister, Mrs. Murray, and Sol Needles, Jr., in individual capacities, they being, as heretofore said, the sole heirs-at-law of Sol, and in consequence, being the owners of the fee in the lands in question, subject, however, to the dower right of the widow.
It is these judgments assigned by the banks after they had received full satisfaction from the estate of Sol Needles, that these three heirs of Sol want this court to set-off against the widow's dower claim.
It would seem to me that the mere recital of the facts is sufficient to fully demonstrate that to permit a set-off would not "promote substantial justice" but would be in aid of the evident scheme to avoid payment of the widow's dower in order that the heirs-at-law might hold the lands of their deceased father free therefrom.
It is argued that if a set-off is not allowed the administrator of complainant's estate will sell the land owned by these defendants (heirs-at-law of Sol) to satisfy the decree for dower and the proceeds of the sale will go into the general assets of the estate of the deceased widow and that any claim which the defendants may have against the widow's estate by reason of their assigned judgments will be considered along with other general claims filed against the estate.
It must be kept in mind that the land in question came to the three defendants as heirs-at-law of Sol, subject to the widow's right of dower and that the title of these lands has never been freed from the lien imposed on them by the final decree, so that all the defendants ever had was title subject to the lien. If sale is made the lien will be satisfied and what remains over and above that amount will be that which the *Page 114 
three defendants get as heirs-at-law of their father. If they are permitted to set off judgments based on the debts of Sol, their father, existing at the time of his decease, they would be getting something to which they are not entitled. The lands came to the defendants subject not only to dower but subject to Sol's debts.
It has been argued that the testimony of the employees of the banks, as heretofore outlined, was inadmissible under R.S.2:97-2. Not so. The testimony was that of nonparties to the suit and received by the court in order that it might determine the true status of the notes, i.e., whether Sol Needles or Mrs. Needles, as between them, was liable for the payment of the amounts thereof. Such testimony was clearly admissible. SeeKapalczynski v. Sitniski, 91 N.J. Eq. 524; 111 Atl. Rep. 24.
I have not considered it necessary to pass on the question whether or not the assignments of the judgments, having been obtained by the heirs-at-law long after the widow filed her bill and after dower had accrued, they would be entitled to set-off as now sought. In Faherty v. Branegan, 112 N.J. Law 134;169 Atl. Rep. 654, the Court of Errors and Appeals said (at p. 136):
"The rule is that a set-off must have been a subsisting right in the defendant at the time the action was commenced." See, also, McAdams v. Randolph, 42 N.J. Law 332.
It is quite evident that the only reason the three heirs-at-law took assignments of the judgments was to defeat the widow's dower.
The next question propounded: Is deceased complainant's estate entitled to collect dower payments accrued to the date of her death?
It is contended by defendants that the death of the widow, even after dower had been admeasured in her lifetime, not only terminated the claim of the widow but the right of her administrator to collect any arrears due at her death.
In Pollitt v. Kerr, 49 N.J. Eq. 65; 22 Atl. Rep. 800,
Vice-Chancellor Van Fleet, after discussing the rule of law with reference to the rights of a widow to dower, said that a more liberal rule prevails in equity, and that rule is: "that where *Page 115 
a widow files a bill in Chancery for dower, and dies pending the suit, her personal representative may revive the suit and recover mesne profits."
In 28 Corp. Jur. Secundum § 71 (at p. 152), the rule stated is:
"In general, a widow's death before assignment or admeasurement of her dower terminates the dower right, but, under certain circumstances, the widow may acquire a vested right to receive an amount equivalent to the value of her dower interest which will pass as part of her estate."
Here there was an admeasurement of dower to the widow of $1,000 annual rent prior to her death and the amounts now due accrued during her lifetime and these amounts became vested in her and are recoverable by her estate.
Defendants rely on Mulford v. Hiers, 13 N.J. Eq. 13, but in that case, which was a partition proceeding, the widow had agreed to accept a gross sum in lieu of dower and died before the sale in partition and the court held that her estate in dower terminated with her death, saying (at p. 14):
"No sale of the dower right was ever made, and consequently there are no proceeds of the sale which the widow could be entitled to have invested for her benefit, or in lieu of which she would receive a sum in gross."
But the court also held (at p. 15), that as to sales made and confirmed prior to the widow's death, "her children are entitled to receive out of the proceeds of the sale a just and reasonable satisfaction for their mother's interest."
The order confirming the master's report, wherein he found that the widow was entitled to $1,000 annually, to be paid recurrently each year, admeasured the dower during the widow's lifetime. It is true that the final decree did not, in words, say that the widow should be paid each recurring year $1,000 in quarterly installments. It did, however, provide for the dower due at the date of the decree and imposed a lien on the lands not only for this amount but for the recurring installments. It may be that the decree should be amended by a nunc pro tunc order inserting the provisions for recurring payments, as set forth in the master's report, *Page 116 
and as long as point is made of the absence of this provision, I will advise such an order, though I deem that the record suffices to admeasure the widow's dower and carries with it an obligation to pay each recurring year.
It is suggested by defendants that the court is without power to amend because an appeal was taken from the final decree and an amendment could only be made by application to the Court of Errors and Appeals. Inasmuch as the record shows and counsel in his brief says that the appeal was dismissed "because the defendants failed to complete their appeal," it is quite apparent that this court has full control of its decree.
The next question propounded is: "Can the court now amend dower payment where income has been decreased because of the loss of certain properties by foreclosure?"
This question arises by reason of the loss of properties by foreclosure, as heretofore set forth. It is undisputed that the properties sold under foreclosure produced before the foreclosure sales 58% of the total income received from all of the properties of Sol Needles' estate, as these rentals appeared before the master when dower was fixed.
That which the petitioner asks in these proceedings is that he be permitted to issue execution in order to make the balance due for dower. The court will not, of course, give such permission if injustice will be worked thereby, and has full control of its decree in order to prevent injustice. Justice may only be accomplished by permitting execution to issue for the amount equitably due at the time of the widow's death. All parties agree that the loss of rentals by reason of foreclosure amount to 58% of the total annual amount thereof. The property at 28 First Avenue was lost as of October 3d 1938, and 634 Washington Street on May 1st, 1939. Counsel for defendants state that mathematically worked out, the quarterly payments on and after May 1st, 1939, should have been $105 rather than $250. I assume these figures to be correct. If not, execution may issue in an amount which is correct, on the basis of a 58% reduction in value of income during the period of the loss. There is no reason to amend the final decree to accomplish equity in this matter and surely *Page 117 
no reason for opening the proceedings had before the master, as suggested by defendants. The order permitting execution, however, must provide that the petitioner herein effectively release the difference between the reduced dower and that which it would have been under the decree, which, as I see it, is $5,611.43, minus $3,332.74, or a difference of $2,278.69.
It is suggested that should this court refuse to permit a set-off of the judgments against the amount due on the dower that the holder of these judgments, the heirs-at-law of Sol, have the right of execution, levy and sale for the accrued dower found to be due to petitioner as representing the deceased widow. Counsel for the widow's administrator now asks for restraint against any such proceedings. Suffice it to say that this issue is not raised by the pleadings and therefore not open for decision, and that restraint will not be granted merely to allay the fears of a party. It will be time to pass on the question of restraint when and if execution is actually issued and the injury to the administrator becomes imminent. See Meyer v. Somerville WaterCo., 82 N.J. Eq. 572; 89 Atl. Rep. 545, and cases cited by Vice-Chancellor Woodruff in First Camden National Bank, c., v.Wilentz, 129 N.J. Eq. 333 (at pp. 339-340); 19 Atl. Rep.
2d 648.
A decree may be entered in accord herewith on notice, unless the parties agree to the form thereof.