775 A.2d 166

IN THE MATTER OF THE DOWER INTEREST
OF THE ESTATE OF MARY B. WHEATON.

Superior Court of New Jersey
Appellate Division

Submitted May 16, 2001—Decided June 14, 2001.

Before Judges KEEFE, EICHEN and WEISSBARD.

*Russell & Russell,* attorneys for appellant Estate of Frank H. Wheaton, Jr. (*Brock D. Russell,* on the brief).

*Eisenstat Gabage Berman & Furman,* attorneys for respondent Estate of Mary B. Wheaton (*Charles W. Gabage,* on the brief).

The opinion of the court was delivered by

EICHEN, J.A.D.

After the death of her husband, Frank H. Wheaton, Jr., Mary B. Wheaton commenced an action in the Chancery Division seeking a judgment permitting the sale of three pieces of real property Mr. Wheaton had owned at the time of his death (the properties).[1] The complaint also requested the court "calculate the value of her dower or other interest [in the properties] on the basis of the net proceeds of sale." Mrs. Wheaton died before the properties were sold.

The primary issue presented by this appeal is whether Mrs. Wheaton's dower interest was sufficiently vested at the time of her death to permit her estate (plaintiff) to recover a gross sum of money in lieu of dower 'from the sale of the properties after her death. Mr. Wheaton's estate (defendant) contends that because the properties had not been sold at the time of her death, the action abated when she died, and Mr. Wheaton's estate is entitled to the properties free of any claims by Mrs. Wheaton's estate.[2]

---

[1] Mr. Wheaton owned twelve parcels of real property in Cumberland County, as well as one parcel in the Bahamas. There are only three properties involved in this appeal because Mrs. Wheaton had previously released her dower claims to the other properties to the Internal Revenue Service (IRS) in partial satisfaction of a $40 million federal tax lien. *See Dorchester Industries, Inc. v. Commissioner,* 108 *T.C.* 320, 340, 1997 WL 210795 (1997) (noting Mrs. Wheaton and the IRS entered their agreement on July 1, 1996), *aff'd,* 208 *F.*3d 205 (3d Cir.2000). In return, it appears the IRS approved Mrs. Wheaton's status as an "Innocent Spouse." *Ibid.*

[2] Mr. Wheaton and Mrs. Wheaton's heirs are the same persons. However, Mr. Wheaton's estate is cooperating with the IRS which is the real party in interest on this appeal because it stands to benefit in the event defendant prevails.

The Chancery Division judge sitting in the Probate Part determined the action could continue on behalf of Mrs. Wheaton's estate notwithstanding that the properties had not been sold at the time of Mrs. Wheaton's death. The judge also concluded that defendant was estopped from challenging plaintiff's entitlement to assert Mrs. Wheaton's dower claim because defendant had caused a delay in the court proceedings. Subsequently, the judge established the value of Mrs. Wheaton's dower interest to be 13.919% of the proceeds of sale of the properties.[3] In a letter opinion issued on January 5, 2000, the judge reasoned:

In a case where an action for the admeasurement of dower had been commenced prior to the death of the wife and particularly when there had been a postponement of the hearing at which the dower interest would have been evaluated and the wife dies prior to the rescheduled date, there is a preserving of her right pending the conclusion of the action and the Court so holds.

On appeal, the estate of Frank Wheaton raises the following arguments:

POINT I

THE TRIAL JUDGE ERRED IN RULING THAT MRS. WHEATON'S DOWER INTEREST WAS NOT TERMINATED BY HER DEATH WHERE SHE DIED PENDING HER ACTION FOR AN ASSIGNMENT OF DOWER, WHERE SHE DID NOT SEEK A GROSS SUM IN LIEU OF DOWER IN HER PLEADINGS[4] AND WHERE SHE DIED BEFORE ANY OF THE SUBJECT PROPERTIES HAD GONE UNDER CONTRACT OR WERE OTHERWISE SOLD.

POINT II

THE TRIAL JUDGE ERRED IN FAILING TO MAKE INQUIRY INTO OR TO OTHERWISE ADDRESS THE ISSUE OF MRS. WHEATON'S HEALTH IN HIS CALCULATION OF HER GROSS SUM IN LIEU OF DOWER.

We reverse. We hold that the widow's dower abated because the properties of her deceased husband had not been sold at the time

---

[3] According to Mrs. Wheaton's estate, as of August 25, 1999, one of the lots had been sold for $116,000, but the date of sale was not disclosed. A second lot was under contract to be sold for $187,500. The third lot, the former marital home, had two prospective buyers, and it was anticipated that it would sell for approximately $530,000.

[4] Defendant argues that Mrs. Wheaton never requested a gross sum in lieu of dower in her pleadings, and, therefore, her dower claim cannot prevail. We need not decide this question in light of our reversal on other grounds.

of the widow's death; therefore, the gross sum in lieu of dower was not "capable of ascertainment." Filing an action prior to the widow's death to have her interest calculated and paid from the proceeds of sale of her deceased husband's properties alone was not sufficient to vest her dower interest.

Mary Bainbridge Wheaton was born on August 8, 1916. She married Frank H. Wheaton, Jr. on October 24, 1935; it was the first and only marriage for both. Four children were born of the marriage. During the course of the marriage, Mr. Wheaton acquired title to the properties solely in his own name. Mr. Wheaton died testate on July 21, 1998. In September 1998, Mrs. Wheaton's health began to fail and she entered a nursing home. On October 7, 1998, Mrs. Wheaton, through her son and attorney-in-fact, Frank H. Wheaton, III (Frank), filed the instant complaint requesting the court to determine her dower interest in the properties, and to do so based on the net proceeds from the sale of the properties.

Frank had been named as executor under his father's last will and testament, but did not serve because of what he perceived as opposition to his appointment by the IRS.[5] When none of the other children chose to qualify, on December 4, 1998, Paul Porreca was named as "a fifth tie-breaking executor" under Mr. Wheaton's will. Shortly thereafter, on January 26, 1999, Mrs. Wheaton died.

Under the ancient common law and the statutes existing at the time Mr. Wheaton acquired title to the properties,[6] a widow had two interests in her deceased husband's real property: the

---

[5] Mrs. Wheaton's estate alleges in its brief that the couple's four children each renounced his or her right to serve as the personal representative of their father's estate because of the "coercive" attitude of the IRS. According to plaintiff, the IRS was responsible for the delay in the appointment of an administrator for Mr. Wheaton's estate, suggesting that the properties would have been sold but for its conduct.

[6] All rights of dower and curtesy were abolished as to the real property which a married person became seised of, during coverture, on and after May 28, 1980. N.J.S.A. 3B:28–2.

temporary right to remain in and use the mansion, *N.J.S.A.* 3A:35–4, and a life estate in one-half of the realty in which he had been seised at any time during the marriage. *N.J.S.A.* 3A:35–1; *see also In re Flasch,* 51 *N.J.Super.* 1, 20, 143 *A.*2d 208 (App.Div.), *certif. denied,* 28 *N.J.* 35, 144 *A.*2d 736 (1958). This interest is known as the widow's dower. Upon the husband's death, the widow's dower became "consummate", or complete, entitling her to an assignment of her interest, *see Hampton v. Hampton Holding Co.,* 17 *N.J.* 431, 438, 111 *A.*2d 761 (1955), either by act of the heirs or by judicial decree. *See Tenbrook v. Jessup,* 60 *N.J. Eq.* 234, 235, 46 *A.* 516 (Ch.1900); *see also* 7A *New Jersey Practice, Wills and Administration,* § 1660, at 260 (Alfred C. Clapp & Dorothy G. Black) (rev.3d ed. 1984) *(Clapp).* The widow's dower could be assigned to the widow by metes and bounds, *see Bleecker v. Hennion,* 23 *N.J. Eq.* 123, 125–26 (Ch. 1872); *see also, Clapp, supra,* § 1675, through an apportionment of rents, *see Burton v. Mellis,* 75 *N.J. Eq.* 10, 12, 72 *A.* 13 (Ch.1909); *Clapp, supra,* § 1676, or by an assignment of her interest through the sale of the property. *See Mulford v. Heirs,* 13 *N.J. Eq.* 13, 14–15 (Ch. 1860); *see also, Clapp, supra,* § 1676. If property was sold free of dower, then all interested parties could agree upon a lump sum to be paid out of the proceeds, *see Bruten v. Miller,* 28 *N.J.Super.* 531, 535, 101 *A.*2d 24 (Ch.Div. 1953); otherwise, the widow could demand investment of the sum, or the court could allow a gross sum in lieu of dower to be paid from the proceeds. *See Potter v. Watkins,* 104 *N.J. Eq.* 13, 17, 144 *A.* 27 (Ch.1928); *see also Clapp, supra,* § 1677. The gross sum is calculated as provided by the rules of court. *See R.* 4:63–3.

In *Mulford v. Hiers,* the Chancery judge considered the case of a widow who consented, in writing, to receive a gross sum in lieu of her dower, but died before all the subject lands were sold. 13 *N.J. Eq.* at 14. On January 15, 1857, the widow filed for her deceased husband's lands to be partitioned. *Id.* at 13. The court granted that motion one year later on January 18, 1858, and in March 1858, the first portion of the real estate was sold. *Id.* at 14. In September 1858, the widow consented, in writing, to receive a

gross sum instead of her dower, but then died on October 18, 1858, before distribution of the sale proceeds. *Ibid.* One month later, on November 27, 1858, the second portion of the husband's lands was sold. *Ibid.*

The widow's children claimed an entitlement to the cash that represented their mother's interest when it came time for distribution of the sale proceeds. *Ibid.* The children of the husband's first marriage argued that their half-siblings were entitled to nothing because their mother passed away before the proceeds were distributed. *Ibid.*

The Chancellor specifically distinguished the properties that had been sold before her death from those sold afterward. *Ibid.* The court stated:

[s]o far as relates to the proceeds of the sale of ... *the land which was sold after the death of the widow,* it is clear that her children can have no claim in virtue of her right of dower.... No sale of the dower right was ever made, and consequently there are no proceeds of the sale which the widow could be entitled to have invested for her benefit, or in lieu of which she could receive a sum in gross.

But in regard to the sales which were made and confirmed in the lifetime of the widow, her children are entitled to receive out of the proceeds of the sale a just and reasonable satisfaction for their mother's interest.

[*Id.* at 14–15 (emphasis added).]

The rule in *Mulford* was applied in *McLaughlin v. McLaughlin,* 22 *N.J. Eq.* 505, 512 (E. & A. 1871). Plaintiff relies on an apparent ambiguity in that opinion to argue "the *McLaughlin* Court[ ] ... inferred that acceptance of a gross sum in lieu of dower prior to death without more, (including sale of the property), would preserve the widow's dower rights upon her death." Plaintiff argues that *McLaughlin* "slightly altered" *Mulford*'s requirement that consent of the widow and sale of the property prior to her death are both required to vest a widow's dower interest. Plaintiff so concludes because the Court's opinion "makes no mention of the one unsold lot [on Green Street] and *appears* to calculate the gross sum due to the widow's heirs upon all properties whether sold or not." (Emphasis added) We disagree with that interpretation.

The facts in *McLaughlin* are illuminated in the Chancery Court's opinion. 20 *N.J. Eq.* 190 (Ch. 1869), *rev'd on other grounds,* 22 *N.J. Eq.* 505, 512 (E. & A. 1871). Mr. McLaughlin died in May 1861, and his widow was appointed administrator of his estate. *Id.* at 191. Mr. McLaughlin was survived by six children, two of whom were from a prior marriage, and had owned various plots of land in Jersey City. *Ibid.* By the consent of all the adult children, the widow remained in the marital home, and undertook the business of managing her husband's other lands, such as collecting rent, paying taxes and making repairs. *Id.* at 191–92. She accounted to the children for their two-thirds, and kept the remaining third for herself, *id.* at 192, even though dower was never formally assigned to her. *Id.* at 191.

Sometime during the widow's lifetime, the children filed a bill for partition, and the appointed master ordered the lands, along with the widow's dower, sold. *Id.* at 192. The lands were all conveyed during the widow's lifetime, except one plot on Green Street because the purchaser refused to close title, breaching the contract for sale. *Ibid.* Thus, with only the Green Street lot's conveyance outstanding, on June 28, 1868, the widow filed a request for a gross sum in lieu of her dower, and on July 7, 1868, a master was appointed to determine the value of her dower. *Ibid.* The widow died on August 20, 1868, *id.* at 191, and the Green Street lot was not conveyed until after her death. *Id.* at 192.

The master's report found the widow's estate was "not entitled to have a gross sum in lieu of her dower in the Green Street lot" because she died prior to the sale. *Id.* at 195. Relying on *Mulford,* the Chancery court agreed completely with the Master. *Ibid.* Thus, the Chancery court restricted any proceeds from the Green Street lot from being included in the gross sum, which would be awarded the widow's estate.

On appeal, the Court of Errors and Appeals expressly approved the Chancellor's conclusion that the widow's estate would receive a gross sum in lieu of dower. 22 *N.J. Eq.* 505, 512 (E. & A. 1871). As plaintiff correctly notes, the opinion of the Court of Errors and

Appeals does not mention the Green Street lot specifically. However, when considered within the context of the prior Chancery opinion, it is clear that the Court agreed that proceeds from the sale of the Green Street lot would not be included in any amounts awarded to her estate.

In its discussion of the question, the Court called the *Mulford* ruling "too well established in the practice of the court to be now shaken," and described the rule as follows:

> where, *after the sale of the premises* in partition, the widow agrees to accept in lieu of her dower such sum as the Chancellor shall deem reasonable, and *dies before distribution*, by such consent the right becomes vested.
>
> [*Id.* at 512 (emphasis added).]

By describing the *Mulford* rule as applying to a widow who dies before *distribution* of proceeds, the *McLaughlin* Court implicitly distinguished between the situation where proceeds exist and only distribution remains, from the situation where no proceeds at all exist, as was the case involving the Green Street lot. Given the Court's recognition of *Mulford*'s application solely to *sold* property, plaintiff's argument is unavailing. *See also, New Jersey Practice, Wills and Administration*, § 1303, at 470 (Alfred C. Clapp & Dorothy G. Black) (rev.3d ed.1984). Accordingly, we are entirely satisfied that Mrs. Wheaton's dower interest abated upon her death.

Later cases support this conclusion. Twenty years after *Mulford*, the Chancellor considered the case of a widow who had not sued for her dower during her lifetime. *See Pollitt v. Kerr*, 49 *N.J. Eq.* 65, 22 *A.* 800 (Ch. 1891). During his lifetime, the husband sold one parcel of land, but his wife did not join him in the deed. *Id.* at 66, 22 A. 800. He executed a mortgage on a second parcel of land, to indemnify his grantee against the possibility he might predecease his wife, and she would then seek to enforce her dower rights against the grantee. *Ibid.* The husband did indeed pre-decease his wife. *Ibid.* Thereafter, the widow approached her husband's grantee and demanded her dower, orally and in writing. *Ibid.* The grantee ignored her, but she brought no suit. *Ibid.* After she died, her administrator petitioned

the court for an award of the mesne profits (rents and income) from the land earned between the time she demanded her dower and her death. *Ibid.*

The parties agreed that, under law, the widow had no recourse for damages, *id.* at 67, 22 *A.* 800, but that in equity, once the widow filed her dower claim, even though she may have died pending its resolution, her administrator could continue her suit and recover the mesne profits earned between the time she filed her action and her death because the mesne profits were capable of ascertainment. *Id.* at 68, 22 A. 800. The widow's estate did not recover, not because her dower could not be determined, but because the widow failed to institute a suit to admeasure her interest prior to her death. *Id.* at 69, 22 A. 800.

In contrast, in *Needles v. Dougherty,* 134 *N.J. Eq.* 108, 109, 34 *A.*2d 396 (Ch.1943), the widow filed her action for admeasurement of her dower interest within her lifetime. A final decree was entered on October 5, 1938, allowing the widow $1,000 per year, and imposing a lien on the land for that payment. *Id.* at 109–10, 34 *A.*2d 396. By the time the widow died on October 23, 1941, over $5,600 was due her. *Id.* at 110, 34 *A.*2d 396. Accordingly, her administrator filed an action to have the lands sold and that amount distributed to her estate. *Ibid.* The husband's children (and heirs-at-law) opposed the action on the ground that the action abated upon the widow's death. *Id.* at 114, 34 *A.*2d 396.

The Chancellor disagreed, noting that the widow's dower had been admeasured prior to her death, and a specific sum assigned to that interest. *Id.* at 115, 34 A.2d 396. The court relied on *Mulford* to distinguish between the sums which accrued to the widow before she died, and those which had not. *Ibid.* The court determined that the widow's administrator was entitled to the money because the sums had been determined and enured to the widow's benefit during her lifetime, *i.e.,* the value of her dower interest had been "estimated." *Ibid.*

Nor is our decision in *In re Flasch* to the contrary. 51 *N.J.Super.* 1, 143 *A.*2d 208. There, the critical issue presented was

whether the husband's failure during his lifetime to ask that his curtesy interest [7] be transformed into an interest in the proceeds of sale prevented his heirs from obtaining his curtesy interest. *Id.* at 20, 143 *A.*2d 208. We held that the widower's interest abated with his death. *Id.* at 22, 143 A.2d 208.

In *Flasch,* the wife passed away, and the marital home, which was titled in her name, passed to her minor sons, then very young. *Id.* at 9–10, 143 *A.*2d 208. The husband remarried three years after his wife's death, obtained court permission to sell the home, and moved the family to California where he purchased a new home with the sale proceeds. *Id.* at 10, 143 *A.*2d 208.

The family continued to reside in California until the widower died. *Id.* at 11, 143 *A.*2d 208. Thereafter, his second wife and the children, whom she had adopted, returned to New Jersey where the wife filed a petition to admeasure her late husband's curtesy rights in the lands, sold nearly three years previously. *Id.* at 11–12, 143 *A.*2d 208. The trial court granted the motion, and awarded the husband's estate a gross sum in lieu of curtesy. *Id.* at 12, 143 *A.*2d 208. We reversed, concluding that, because the husband had not asserted his curtesy rights within his lifetime, he waived his curtesy interest. *Id.* at 22–23, 143 *A.*2d 208.

Hence, contrary to plaintiff's urgings, *Mulford* and *McLaughlin* do not "demonstrate an obvious progression of our courts' willingness to recognize exceptions" to the rule that a widow is divested of her right to dower upon her death. Although Mrs. Wheaton took the necessary steps to perfect assignment of her dower interest by filing the Chancery action and requesting the value of her dower be calculated "on the basis of the net proceeds of sale," at the time of her death the "sum" was not capable of ascertainment and, therefore, her interest expired with her. Therefore, plaintiff's argument fails as a matter of law.

---

[7] In *Flasch,* we held that the statute required curtesy and dower to be treated the same. 51 *N.J.Super.* at 21, 143 *A.*2d 208 (citing *N.J.S.A.* 3A:35–2, currently codified at *N.J.S.A.* 3B:28–1).

We address briefly defendant's argument that the judge erred in concluding it was estopped from asserting Mrs. Wheaton's death as a defense to the action.

Equitable estoppel has been defined as

"the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed ... as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse...."

The doctrine is "designed to prevent a party's disavowal of previous conduct if such repudiation 'would not be responsive to the demands of justice and good conscience.'"

[*Heuer v. Heuer*, 152 *N.J.* 226, 237, 704 *A.*2d 913 (1998) (citations omitted).]

Applying these principles, we hold that the competent evidence presented in this case does not support such an argument.

Plaintiff alleged that defendant and the IRS so delayed the probate proceedings that Mrs. Wheaton died before her dower interest could be perfected. Even if the IRS was dilatory in furnishing the documents requested by defendant's attorney, and tacitly discouraged the heirs from seeking appointment as personal representative of their father's estate, such conduct would not justify estopping defendant from arguing that Mrs. Wheaton's dower interest terminated upon her death.

We have carefully reviewed the record and conclude that neither defendant nor the IRS should be faulted for the unfortunate turn of events that culminated in Mrs. Wheaton's death before the properties could be sold. The Wheaton children knew immediately after their father's death that they had a decision to make: either act as their father's executor or petition the court to appoint an administrator. Plaintiffs presented no competent evidence that the IRS or Mr. Wheaton's estate blocked any of the children from serving in that capacity, nor any evidence to show the IRS prevented the Superior Court from appointing an unrelated administrator as quickly as that court was able. Additionally, whatever documents were requested from the IRS that were not immediately furnished were available from other sources. Moreover, where the heirs of both estates are the same, it is unlikely

that the short delay could be viewed as a tactic to impede plaintiff's rights.

In view of our reversal under Point I, we need not resolve the issue raised in Point II.

The matter is reversed and remanded for entry of judgment in favor of defendant.